**FILED**
**CLERK**

12/11/2024 1:08 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

JANE DOE, JOHN DOE, DOE CHILD 1,
and DOE CHILD 2,

<em>Plaintiffs</em>,

-against-

DR. EDWARD A. SALINA, JR., <em>et al</em>.,

<em>Defendants</em>.

----------------------------------------------------------------x

**MEMORANDUM**
**AND ORDER**
23-CV-3529 (JMW)

**A P P E A R A N C E S:**

    Ronald A. Berutti, Esq.
    **Murray-Nolan Berutti LLC**
    30 Wall Street
    New York, NY 10005
    *Attorney for Plaintiffs*

    Adam I. Kleinberg, Esq.
    Connor Mulry, Esq.
    **Guercio & Guercio LLP**
    77 Conklin Street
    Carle Place, NY 11735
    *Attorneys for Defendants*

**WICKS**, Magistrate Judge:

COVID-19 mask mandates spawned a fertile ground of litigation.[1] Some arose in the employment context in the private sector,[2] while others challenged government regulation.[3] This case, however, involves constitutional challenges to administrative actions taken by a Long Island school district that arise out of the state's mask mandate.  That is, did the actions taken by the district and its officials in response to the mask mandate infringe upon the constitutional rights, namely, First Amendment right to assembly and association, as well as Equal Protection, of Plaintiffs who are parents of two minor children who attended the school?  The challenge is not to the mask mandate itself; rather, it is to the actions taken in response.

Plaintiffs Jane Doe and John Doe, a husband and wife (the "Parent Plaintiffs"), bring this action with and on behalf of their two minor children, Doe Child 1, and Doe Child 2 (the "Doe

---

[1] *See* Megan Warshawsky, *To Mask or Not to Mask: Leading Claims in Federal School Mask Litigation*, 98 Chi.-Kent L. Rev. 891, 891–92 (2023) ("The fight over whether, and how, to combat COVID-19 in schools has led to cyclical battles involving school districts, parents, and local officials. Throughout the pandemic, masks in the classroom has emerged as a highly contentious issue.")

[2] *See, e.g., Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264 (N.D.N.Y. 2023), *aff'd*, 103 F.4th 159 (2d Cir. 2024) (masking and social distancing policies which former employer implemented in response to COVID-19 pandemic did not constitute adverse employment actions within meaning of ADA); (clannehling employer's requirement that all employees wear masks while on duty).

[3] *See, e.g., Abadi v. Am. Airlines, Inc.*, No. 23-CV-4033 (LJL), 2024 WL 1346437, at *5 (S.D.N.Y. Mar. 29, 2024) (challenging the mask mandate on private airlines) (citing *Health Freedom Def. Fund, Inc. v. Biden*, 599 F Supp. 3d 1144 (M.D. Fla. 2022) and *Health Freedom Def. Fund, Inc. v. President of the United States*, 71 F.4th 888 (11th Cir. 2023)) ("On April 18, 2022, the United States District Court for the Middle District of Florida issued an opinion finding that the Mask Mandate exceeded the CDC's statutory authority and violated the procedures required for agency rulemaking under the Administrative Procedures Act, and accordingly vacated the Mask Mandate. The Mask Mandate expired on May 11, 2023, the date that the HHS Secretary's declaration of a public health emergency expired. The Eleventh Circuit thus vacated as moot the Florida district court's decision."); *Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 98 (2d Cir. 2024), *cert. denied sub nom. Doe v. Franklin Square Union Sch. Dist.*, No. 24-340, 2024 WL 4805912 (U.S. Nov. 18, 2024) (upon a challenge from a student, holding the School District's application of the NYSDOH's mask mandate to student "survive[d] rational basis review because it was reasonably related to a legitimate state objective: ensuring the health and safety of all students, teachers, and visitors on school grounds by curbing the spread of COVID-19.").

Children") (collectively, "Plaintiffs"), pursuant to 42 U.S.C. § 1983, alleging claims against the Plainedge Union Free School District and various school administrators arising out of Jane Doe's "public advocacy" against policies implemented at her children's elementary school –Eastplain Elementary School -- including its COVID-19 mask protocols. (*See generally* ECF Nos. 1, 32.) In response to this advocacy, the Complaint alleges, school administrators banned Jane Doe from school property, and the Doe Children faced retaliatory and unequal treatment for attending school without masks. (*Id.*) Plaintiffs filed their Amended Complaint on May 1, 2024, asserting violations of: (i) Plaintiffs' right to free speech and the free exercise thereof (Counts I and V); (ii) Plaintiffs' rights of association, assembly, and petition (Count II); (iii) procedural due process (Counts III and VI); and (iv) equal protection (Counts IV and VII) against Defendants Jennifer Maggio, Lynnda Nadien, Joseph Netto, Sonny Sagnuolo, Sisi Townson, Plainedge Union Free School District Board of Education, Edward A. Salina, Jr, Emily O'Brien, Sarah Azizollahoff, Catherine Flanagan, Raymond Paris (collectively, "Defendants"). (*See generally*, ECF No. 32.)

On May 24, 2024, Defendants filed a request for a pre-motion conference to dismiss Counts II through VII of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which the Court granted on May 28, 2024 and scheduled a Pre Motion Conference before the undersigned. (*See* ECF No. 34; Electronic Order dated May 28, 2024.)[4] At the pre-motion conference a briefing schedule was set. (ECF No. 36.) Defendants filed their Motion to Dismiss Counts II through VII of the Amended Complaint on November 14, 2024 (ECF Nos. 43, 45), which is opposed by Plaintiffs (ECF No. 44.) For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED** *in part* and **DENIED** *in part*.

---

[4] On March 14, 2024, the parties consented to the undersigned for all purposes. (*See* ECF No. 25.)

## BACKGROUND

### I.    Factual Background

The following allegations are drawn from the Amended Complaint filed on May 1, 2024 (ECF No. 32) and the documents integral to it.

#### The Parties

Plaintiff Jane Doe, her husband, and two children, are all residents of Massapequa, New York. (ECF No. 32 at ¶¶ 8-11.)  The Doe Children were enrolled in the Plainedge Union Free School District (hereafter, the "District") at Eastplain Elementary School (hereafter, the "School") for the 2021-2022 school year. (*Id*. at ¶¶ 2-3.) Defendant Dr. Edward Salina Jr. is the Superintendent of the District, Emily O'Brien is the Principal of the School, Sarah Azizllahoff is the Assistant (Vice) Principal of the School, and Defendants Catherine Flanagan, Raymond Paris, Jennifer Maggio, Dr. Lynnda Nadien, Dr. Joseph Netto, Sonny Sagnuolo, and Sisi Townson are publicly elected Trustees (the "Trustees") of the District's Board of Education (hereafter, the "Board"), also a named Defendant in this case. (*Id.* at ¶¶ 12-22.) The Board is responsible for policies and curriculum of the District. (*Id*. at ¶ 22.)

#### New York State's Response to the COVID-19 Pandemic and the Nassau Supreme Court Decision

In response to the COVID-19 pandemic, on March 7, 2020, then-New York State Governor Andrew Cuomo issued Executive Order No. 202, which declared "a State disaster emergency for the entire State of New York." (*See* ECF No. 43-20 at 11.) On March 16, 2020, Governor Cuomo issued Executive Order 202.4, which ordered all schools to close for in-person instruction by March 18, 2020. (*Id*.) For the 2020-2021 school year, the New York State Department of Health

("NYSDOH") issued emergency guidance that required face masks to be worn in schools. (*Id*.) The first of these was released on August 26, 2020, and entitled "*Interim Guidance for In-Person Instruction at Pre-K to Grade 12 Schools During the COVID-19 Public Health Emergency*" (the "Interim Guidance"). (*Id*.) On August 27, 2021, three days after Governor Kathy Hochul was sworn into office, NYSDOH Commissioner Howard Zucker issued "Commissioner's Determination on Indoor Masking Pursuant to 10 NYCRR 2.61" requiring universal masking in schools "until this determination is modified or rescinded" to combat the spread of the Delta COVID-10 variant, which was stated to be "approximately twice as transmissible as the SARS-COV-2 strain." (*Id*. at 12.) On September 2, 2021, the NYSDOH issued "Interim NYSDOH Guidance for Classroom Instruction in P-12 Schools During the 2021-2022 Academic Year[,]" which clarified that under the Commissioner's Determination referenced above, "all students, personnel, teachers, administrators, contractors, and visitors must wear masks at all times indoors, regardless of vaccination status." (*Id*.) On November 24, 2021, the NYSDOH Commissioner promulgated 10 NYCRR § 2.60 which continued to impose a mask mandate in schools, and, on December 10, 2021, NYSDOH Commissioner Mary T. Bassett issued "*Commissioner's Determination on Indoor Masking Pursuant to 10 NYCRR 2.60*" which continued the school mask mandate to combat the spread of the Delta COVID-19 variant. (*Id*. at 13.)

On January 24, 2022, Nassau County Supreme Court Justice Thomas Rademaker issued a Decision and Order declaring 10 N.Y.C.R.R. Part 2.60 void and unenforceable as a matter of law because it was promulgated and enacted unlawfully by an executive branch state agency (the "January 24th Decision") (*Id*.) (citing *Demetriou v. New York State Dep't of Health*, 74 Misc. 3d 792, 162 N.Y.S.3d 673 (Sup. Ct., Nassau Cty. 2022) ("*Demetriou*")). The January 24th Decision was uploaded to the New York State Courts Electronic Filing System at 4:53 p.m. (*Id*.) That same

evening, the New York State Education Department ("SED") released a public statement that provided: "It is SED's understanding that the Department of Health will appeal the Nassau County Supreme Court decision, which will result in an automatic stay that will unambiguously restore the mask rule until such time as an appellate court issues a further ruling. Therefore, schools must continue to follow the mask rule." (*Id*.) The State defendants in *Demetriou* immediately appealed the January 24th Decision. By 5:00 p.m. on January 25, 2022, the Appellate Division, Second Department granted a temporary stay of the January 24th Decision. (*Id*.) On January 25, 2022, SED released a second statement that read: "The Governor and State DOH have filed a Notice of Appeal and are seeking confirmation that the Court's order is stayed. While these legal steps occur, it is [SED's] position that schools should continue to follow the mask rule." (*Id*. at 14.) The SED Commissioner also released a statement that day indicating the school mask mandate remained in effect. (*Id*.)

On January 28, 2022, SED released another statement indicating the Appellate Division, Second Department issued "a stay order which upheld the Department of Health's mask requirement in schools (10 NYCRR 2.60)." (*Id*.) This statement also provided that "the mask rule remained in effect, and school districts had to abide by any commitments to mask-wearing contained in their publicly posted reopening plans for the 2021-2022 school year." (*Id*.) On January 31, 2022, the Appellate Division, Second Department granted a stay of the January 24th Decision pending the outcome of the appeal. (*Id.*) On March 2, 2022, the NYSDOH lifted the mask mandate for schools in the State of New York, making masks optional in schools. (*Id*.)

### *Plaintiff Jane Doe's Advocacy*

During the 2020-2021 school year, students enrolled in the District, including the Doe Children, attended school in-person subject to numerous COVID-19 protocols, including but not

limited to: universal masking, social distancing, plexiglass surrounding classroom seating, and other measures. (*Id*. at ¶ 26.) Following the District's implementation of various COVID-19 policies in 2020-2021, Plaintiff Jane Doe sent multiple e-mails to various school board members in May 2021 expressing concern regarding the school's implementation of these policies. (*Id.* ¶¶ 26-31). Specifically, Mrs. Doe requested that there be new policies regarding the use of masks and that there either be an option for the parents to opt their children out, or for children to be unmasked at their desks. (*Id.* at ¶¶ 30-31). Mrs. Doe continued to do more mask-related advocacy-related activities such as attending school board meetings, arranging petition drives and sending more emails to board members regarding mask policies. (*Id.* at ¶¶ 32-37, 39, 41).

On June 8, 2021, Mrs. Doe attended a Board meeting for the first time to publicly advocate for an end to mask mandates, "a matter of public concern," and "[f]rom then forward, Mrs. Doe became an outspoken advocate of unmasking both at Board meetings and on social media, where she gained a significant following among District parents." (*Id*. at ¶ 34-35.) On October 27, 2021, Mrs. Doe became an administrator of a private Facebook group, "Plainedge Parents for Liberty," a group whose members discussed and organized advocacy concerning issues of public concern and affecting school children regarding COVID-19 measures (*e.g.* masking and student segregation), school lunches, teaching of Critical Race Theory material, and police appreciation. (*Id*. at ¶ 70.)

At another board meeting on September 21, 2021, Mrs. Doe advocated against a children's book entitled, *Front Desk*, that was being used in the classroom based on her belief that the book "portrayed police officers as racist while simultaneously promoting Critical Race Theory political concepts." (*Id*. at ¶ 42.) Parent Plaintiffs also protested the school's use of Scholastic books or any books that promote Critical Race Theory and the Black Lives Matter movement or similar political

doctrines in class. (*Id*. at ¶ 42-43) Mrs. Doe directed that the Doe Children not be present in the classroom when the book was to be the subject of a lesson or discussion. (*Id*.) Mrs. Doe further expressed her views on her public Facebook page and had an email discussion with her husband and Defendant O'Brien regarding the use of these materials in Child 1's education. (*Id.* at ¶¶ 45,47-51). Mrs. Doe shared the email exchange regarding *Front Desk* between her and Defendant O'Brien on her private Facebook page, and one of the other parents with access to the page posted the private page on a public Twitter page, attacking Mrs. Doe and calling her "racist." (*Id.* at ¶¶ 52-53). Defendant Nadien later responded to the post, claiming the parents on the Facebook page, including Mrs. Doe, were "promoting censorship" and "ingit[ing] a fake controversy[.]" (*Id.* at ¶¶ 54.)

During the week of October 14, 2021, Plainedge Federation of Teachers Union president, Perry Fuchs ("Fuchs"), emailed all District teachers to raise concern about parents, who he alleged were making "vicious attacks on public education." (*Id*. at ¶ 55.) Mrs. Doe "came to learn that, in fact, it was her social media account being monitored" by school administrators. (*Id*. at ¶ 56.) Mrs. Doe spoke at an October 14, 2021 meeting of the Board to advocate on matters of public concern including to express support of the teachers and to express dissatisfaction with being characterized as "toxic," "racist," "anti-public education," and "fools" by District leaders for raising legitimate concerns about the book, *Front Desk* being read and discussed in the classroom.  (*Id*. at ¶ 63.) Mrs. Doe "was treated differently than all other speakers, whose microphones were not turned off, so that an example could be made of her." (*Id*. at ¶ 65.)

 On October 21, 2021, Mrs. Doe supplied law enforcement themed police appreciation gifts from Child 1 and Child 2 for distribution in their classes, which included a brief biography of the Doe Children's grandfather, who is a retired New York Police Department sergeant, and a "Thank

You" note that a student could hand to a police officer of their choice if they so chose. (*Id.* at ¶ 66.) Principal O'Brien denied approval of handing the gifts out to classes and returned them home with the children. (*Id.*) Other similar take-home bags, not concerning police, had been distributed to the classes previously without issue such that Mrs. Doe's take-home bag was being treated differently than the take-home bags of others. (*Id.* at ¶ 67.) Following emails from O'Brien to Mr. and Mrs. Doe between October 24–28, 2021, O'Brien mischaracterized the gifts as a "writing assignment," which it was not, and that school-sponsored police appreciation activities would follow in November. (*Id.* at ¶ 69.)

On November 9, 2021, Mrs. Doe rallied online members of the "Plainedge Parents for Liberty" Facebook group to attend that night's Board meeting to raise issues of public concern including, *inter alia*, the school lunch program, Critical Race Theory learning materials, and Fuch's previous call to combat "toxic parents." (*Id.* at ¶ 78.) Mrs. Doe attended the Board meeting and spoke during the public comment portion on numerous matters of public concern which were "oppositional to defendants' positions." (*Id.* at ¶ 79.) The next day, Mrs. Doe's father attended the Veteran's read-aloud at the School to speak to the children about his military service, and Mrs. Doe attended the event with her father having obtained permission in advance to do so from the event organizer, Ms. Mento. (*Id.* at ¶ 80.)

When exiting the School, Mrs. Doe observed how the cafeteria was set up with rows of desks instead of cafeteria tables since the pandemic began and photographed an empty part of the cafeteria visible from the hallway, because she noted the actual cafeteria seating arrangement was different than what was portrayed on the report televised on Plainedge television on such subject. (*Id.* at ¶ 81.) On November 14, 2021, Mrs. Doe posted the photo on the public Plainedge Community Group Facebook page (depicting individual desks not facing each other) along with a

photograph of the cafeteria at the other Plainedge district elementary school (depicting full size cafeteria lunch tables with students facing each other) to "demonstrate the disparity and the inconsistency in the Plainedge report." (*Id.* at ¶ 82.)

In late-2021, the School planned to host an event for Veterans and Law Enforcement, as an appreciation for their service. (*Id.* at ¶ 85.) Mrs. Doe asked Ms. Mento if she could attend the event with her father, a retired NYPD officer, to which Ms. Mento responded, "Oh, absolutely!" (*Id.* at ¶¶ 85, 87). Upon Mrs. Doe's arrival, two security guards refused to grant her entry and shut the doors into the building to "protect the children[.]" (*Id.* at ¶¶ 87-90.) The guards refused to grant Mrs. Doe entry without approval from Defendant O'Brien, but they also insisted that O'Brien was not available. (*Id.* at ¶ 92.) Eventually, Ms. Mento came to the scene and affirmed that she gave Mrs. Doe approval to come to the event, but the guards still refused to grant Mrs. Doe entry, and Defendant O'Brien eventually came to the scene and denied Plaintiff entry. (*Id.* at ¶¶ 93-97.) After O'Brien left the area, Defendant Azizollahoff came and allowed Mrs. Doe to enter the lobby where they sat and spoke. (*Id.* at ¶ 99.) Azizollahoff told Mrs. Doe that her being outspoken about everything, from the police goodies handout to the book they chose for that day, was an issue and the reason the handouts were denied was because some people may be "anti-cops" and would be upset if their child brought the items home. (*Id.* at ¶ 100.) Azizollahoff then walked Mrs. Doe down to her son's kindergarten class so that she could see her father with the class for two minutes, and then walked her back to the exit. (*Id.*)

Following an Executive Order from Nassau County Executive Bruce Blakeman on the ceasing of enforcement of mask mandates and directives on January 6, 2022, Mrs. Doe and various other parents spoke at a Board meeting on January 13, 2022 to advocate a vote in favor of mask choice in accordance with the order. (*Id.* at ¶¶102-103.) Mrs. Doe made multiple social media

posts and emails to the school board to encourage attending a multi-district meeting to advocate for mask decisions against the State, but there was no response. (*Id.* at ¶ 105.)

### *Treatment of the Doe Children*

As part of the school's masking policy, the Doe Children were separated from the other students due to their refusal to wear masks on January 27, 2022, and January 28, 2022. (*Id.* at ¶¶ 118, 120, 131.)  The children were still allowed to attend school but were placed in a separate classroom and given worksheets to complete with no teachers supervising or providing educational instructions. (*Id.* at ¶ 120.)  The Doe Children were only allowed to interact with other masked children during lunch periods and were only allowed to use facilities such as restrooms with an adult escort. (*Id.* at ¶¶ 119, 121, 122.)  Mrs. Doe made several written requests to Defendant O'Brien seeking an explanation for the segregation of the Doe Children. (*Id*. at ¶ 124.) On January 27, 2022 Defendant O'Brien responded via phone that "she would not be putting anything in writing and that all our communications would be 'verbal.'" (*Id.* at ¶ 125.) Mrs. Doe sent multiple emails to Defendant O'Brien and the board regarding the school's treatment of her children which went unanswered. (*Id.* at ¶¶ 127-130.)

On January 28, 2022, the Doe Children went to school without masks in protest of the school's masking policy. (*Id.* at ¶¶ 131.)  Child 1 called Mrs. Doe asking to be brought home, and claiming the teachers and Defendant O'Brien were "being mean" to Child 1 after he used his phone in class. (*Id.* at ¶ 132.)  Following this call, Ms. Doe went to the school, and after being told Defendants O'Brien and Azizallaholf were unavailable, Mrs. Doe called the police out of concern for her children (*Id*.)  Nassau County Police and Homeland Security Officer Anthony Natale arrived at the school around 10:30 a.m. (*Id.* at ¶¶ 136, 139-140.)  Following the January 28, 2022 incident, Child 1 was subjected to multiple instances of bullying and exclusion from his peers. (*Id.*

at ¶¶ 162-164.) On March 21, 2022, Mrs. Doe reached to school officials via email to report bullying and harassment of Child 1 but received no response. (*Id*. at ¶ 165.) On March 30, 2022, Defendant O'Brien stated that Plaintiff would not be allowed to attend a PTA school function without explanation, advising her only that she was "currently ineligible to attend." (*Id.* at ¶¶ 165-169, 172.) The bullying of Child 1 continued until June 2022, and caused Child 1 "to experience extreme anxiety," which resulted in him not attending his Fifth Grade graduation, and his ultimate transfer to a new school district in August 2022. (*Id.* at ¶¶ 188, 189.)

### *The "No Trespass" Letter*

On January 30, 2022, Mrs. Doe received an email from Defendant Salina, stating that she was banned from all school property for an indefinite period of time (hereafter, the "No Trespass Letter"). (*Id.* at ¶ 144.) The No Trespass Letter referred to the various social media posts from the Facebook page and the letter included a threat of arrest, stating the police were informed of the ban. (*Id.*) Specifically, the No Trespass Letter addressed to Mrs. Doe states as follows:

> The District is committed to providing an orderly, safe, supportive, respectful environment that is conducive to learning. It is our determination that the manner by which you conducted yourself while on school premises at the Eastplain Elementary School on two separate occasions is in direct violation of the District's Code of Conduct. On Wednesday, January 26, 2022 you entered the Eastplain Elementary School and refused to wear a mask when directed by Principal O'Brien, which is in violation of a NYS mandate and in violation of the District Code of Conduct. Additionally, on Friday, January 28, 2022 you entered the Eastplain Elementary School and demanded to see Principal O'Brien immediately. Our staff asked you to wait until she was available, however you decided this was unacceptable and placed a 911 call to the Nassau County Police Department (NCPD), seeking emergency support by police officers at the school, although there was no criminal activity taking place.
>
> On both occasions, you spoke disrespectfully to Principal O'Brien, and sent several text and email messages, demanding she submit to you in writing, the location of your children who were in an alternate classroom as a result of not wearing a mask as mandated by the New York State Department of Health and NYSED. You expressed anger that your children were not permitted to use their cell phone in class to communicate with you, a violation of the District's Code of Conduct for students. We do not permit students to use

cell phones while in class unless authorized by teachers for instructional purposes but, we did provide access to a phone for your child to call you which was located in our Nurse's Office when they requested to speak with you.

Your inappropriate behaviors demonstrated your willful intent to disrupt the orderly conduct of classes, school programs, another violation of our District Code of Conduct. The scene you created, including raising your voice on numerous occasions was heard by staff and students passing by in the hallway and was alarming and upsetting to both the children and staff. Your conduct towards Principal O'Brien, our Security Officers and Greeter, constitute harassment, as they felt threatened by your tone of voice and your irrational behaviors.

We also reviewed District video security recordings as well as the video posted by you (now taken down) of your disrespectful interactions with the Nassau County Police Department Officers that arrived on the scene as a result of your 911 call. The police officers attempted to explain to you that Principal O'Brien was unavailable and you were not permitted to enter the building and suggested you call the Superintendent of Schools. The police officers did share that this isn't the first time you have caused a "scene" here at the schools. You were argumentative with the police officers. You chose to record the event and post it for the public to review. Upon review of your public posts on social media, I also agree with your statements that you may well be "exhausted and confused," have "clouded judgement," and "if you could go back and do it again, I would have certainly went with a different route," thereby admitting you behaved inappropriately as it relates to this incident. Ultimately, we are required to be in compliance with NYS Laws and mandates and the principals and teachers are only doing their jobs on a daily basis.

Due to your continued erratic behaviors, failure to comply with the District's Code of Conduct, and your disrespectful and threatening behaviors, you are no longer permitted on the property of any Plainedge School District facility without the express written consent of the Superintendent of Schools for any reason.

Your presence will constitute trespassing, a violation of the law, and the NCPD will be notified which may result in your arrest. All school administrators and security team members are aware that you are not permitted on the premises effective immediately.

(ECF No. 45-1 at 1-2.)

On Thursday, February 3, 2022, Mrs. Doe responded to Salina by email requesting permission to bring her younger son to his soccer program on Sunday at the middle school, and to attend the "Someone Special Dance" the following Friday with her older son. (*Id*. at ¶ 151.) Salina denied the request with respect to her son's soccer program on February 4, 2022, based on what Mrs. Doe was "sharing about the schools on social media for months" as a reason for her ban, and

informed her that he would revert to her with a decision on her request to rescind the No Trespass Letter by close of business Monday. (*Id*. at ¶ 152.)

On Monday, February 7, 2022, Salina emailed Mrs. Doe denying her request to rescind the No Trespass Letter, further advising that he would be "monitoring all forms of [her] communication [] in Plainedge" and threatening further punitive action. (*Id*. at ¶¶ 153-155.) On Friday, February 11, 2022, the Eastplain "*Special Someone Dance*" was held, which event was sponsored by the Eastplain PTA. (*Id*. at ¶ 158.) Mrs. Doe was banned from attending the event. (*Id*.) On February 18, 2022, attorneys on behalf of Mrs. Doe sent a letter to Salina regarding the No Trespass Letter, which was "ignored" by Salina. (*Id*. at ¶ 159.) On February 26, 2022, Salina approved Mrs. Doe's request, previously made on February 3, 2022, to enter School grounds to take her son to soccer. (*Id*. at ¶ 160.)

### *Lifting of the Ban*

Throughout the month of April 2022, Ms. Doe sent multiple emails to various officials for permission to attend certain school events, with all her requests being denied, or retroactively denied due to her ban on accessing school property as specified in the No Trespass Letter. (*Id*. at ¶¶ 173-178.) Plaintiff Parents filed a Notice of Claim on April 26, 2022 against the Board, Salina, and O'Brien, claiming that Mrs. Doe had intended to run for a position on the Board in the May 27, 2022, School District Budget and Board Election, but the ban silenced her from speaking. (*Id*. at ¶¶ 180, 181.) On May 23, 2022, the Board asked if Mrs. Doe would waive the Notice of Claim and release any civil rights claims against the school in exchange for lifting the ban, which Mrs. Doe rejected. (*Id*. at ¶ 183.) Following the election's conclusion, Mrs. Doe received notice that the ban would be lifted on June 30, 2022. (*Id*. at ¶ 184.)

## II.    **Procedural History**

Plaintiffs initially commenced this action on May 10, 2023, under the pseudonyms Jane Doe, John Doe, Doe Child 1, and Doe Child 2. (ECF No. 1.) On May 25, 2023, this Court issued an Order to Show Cause as to why "under the standard set forth in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) and other applicable law, the Court should permit them to remain anonymous in this action." (Electronic Order dated May 25, 2023.) On May 30, 2023, Plaintiffs filed a Motion to Proceed Under Pseudonyms (ECF No. 11), which was subsequently granted by the undersigned on March 25, 2024. (ECF No. 29.) On March 18, 2024, the parties consented to the undersigned for all purposes. (ECF No. 26.)

On May 1, 2024, Plaintiffs filed an Amended Complaint against Defendants, asserting violations of: (i) Ms. Doe's first amendment right to free speech and the free exercise thereof (Count I); (ii) Plaintiffs' first amendment rights of association, assembly, and petition (Count II); (iii) the Doe Children's procedural due process rights (Count III); (iv) the Doe Children's equal protection rights (Count IV); (v) the Doe Children's first amendment rights (Count V); (vi) Mrs. Doe's procedural due process rights (Count VI); and (vii) Mrs. Doe's equal protection rights (Count VII). (*See generally*, ECF No. 32.)

With respect to Count I, Plaintiffs allege Defendants violated Mrs. Doe's first amendment right to free speech by "punishing her for the free exercise thereof, and by acting to chill her right and ability to exercise such rights." (*Id*. at ¶ 195.) As to Count II, Plaintiffs allege Defendants interfered with the Plaintiffs' rights of association, assembly, and to petition the government "by targeting and punishing Mrs. Doe with the No Trespass [L]etter and advising her that all of her speech was being monitored, in violation of her rights protected by the First and Fourteenth Amendments of the United States Constitution, which then had a chilling effect on her and all the

[P]laintiffs thereafter, including their ability to speak, write or associate with those deemed by [D]efendants to be opposed to [D]efendants' policies and/or practices." (*Id*. at ¶ 199.)

Count III alleges the Doe Children were "punished by O'Brien, Azizollahoff, [and] each of the Individual Defendants who knew or should have known of the same, and who adopted the same as official acts either officially or implicitly as an official district practice, without due process and in violation of equal protection, by segregating the Doe Children and other unmasked children, then treating them punitively, without any due process or procedure in place to determine the propriety of such punishment, most particularly in light of other schools in the District not segregating unmasked students." (*Id*. at ¶ 203.) Plaintiffs further allege that Child 1 was not afforded due process and his equal protection rights were violated following Mrs. Doe's report that he was being bullied, which thereafter was "not investigated in keeping with appropriate procedure, in delegation of their First Amendment rights." (*Id*. at ¶ 204.)

Count IV alleges the Doe Children were "treated differently than masked children by O'Brien and Azizollahoff, differently than unmasked children in other District schools, in violation of their 14th Amendment rights to Equal Protection under the United States Constitution, all with the intent to retaliate and punish them for the free speech exercised by Mrs. Doe and themselves" and Child 1 was treated differently than other alleged bullying victims in the District. (*Id*. at ¶ 209.) As to Count V, Plaintiffs allege the Doe Children engaged in symbolic speech by their attending school without a mask following the injunction related to unmasking being stayed and/or vacated, and, "[l]ike many other children who had experienced the harmful effects of masking, the Doe Children chose to attend school unmasked and were swiftly punished via segregation and then progressively more harsh treatment by O'Brien and Azizollahoff to punish them for exercising their First and 14th Amendment rights under the United States Constitution." (*Id*. at ¶ 215.)

16

With respect to Count VI, Plaintiffs allege Mrs. Doe was punished by Salina, O'Brien, Azizollahoff, the Individual Board Defendants, and the Board without due process, "by virtue of the issuance of a No Trespass [L]etter without any procedural mechanisms in place for a full and fair hearing, to be confronted with the evidence on which it was based, and without any right to appeal." (*Id*. at ¶ 220.) Finally, Count VII alleges that Mrs. Doe "was treated differently from all other citizens in the District" including, but not limited to, banning her from the School, "because she spoke up and objected to the policies and procedures within the District's schools as was her right, and without threat or intimidation." (*Id*. at ¶¶ 227-228.)

On May 24, 2024, Defendants filed a Pre Motion Conference Letter, seeking leave to move to dismiss Counts II through VII asserted in the Amended Complaint pursuant to FRCP 12(b)(6). (*See* ECF No. 34.)[5] On May 28, 2024, the undersigned granted Defendants' Motion for a Pre-Motion Conference, and held the Conference with the parties on July 1, 2024. (ECF No. 36.) At the Conference, Defendants were granted leave to file the motion to dismiss and a briefing schedule was set. (*Id*.) Defendants filed their Motion to Dismiss on November 14, 2024 (ECF No. 43), and Plaintiffs filed their Response in Opposition on November 15, 2024 (ECF No. 44). Defendants filed their Reply in Support on November 15, 2024. (ECF No. 45.) The parties appeared for oral argument on the motion on December 9, 2024. (ECF No. 47.)

---

[5] Notably, Defendants do not seek to dismiss Mrs. Doe's First Cause of Action asserting a First Amendment free speech claim at this juncture (*i.e.*, Count I). (*Id*.) However, Defendants argue that Plaintiffs "seek to miscast" Mrs. Doe's free speech claim "as one that also claims infringement on all [P]laintiffs' First Amendment rights to association, assembly and to petition the government." *Id*. Defendants claim that there "was no custodial depravation here nor is there a general right to social association" and "there is nothing indicating the ban from school property impacted [Mrs. Doe] or any [P]laintiffs' ability to speak, assemble, or associate in alternative forums[,]" and, therefore, Plaintiffs' Second Cause of Action should be dismissed.  (*Id*.); *see also* ECF No. 44 at 18 ("[D]efendants do not seek the dismissal of Mrs. Doe's Free Speech claim (Count I), but rather seeks dismissal of her Assembly/Petition claim and the Children's Free Speech claim."); ECF No. 45-2 at 5 (Defendants request the Court dismiss the second through seventh causes of actions of plaintiffs' amended complaint).

### III.    **The Parties' Contentions**

### A.    **Defendants' Motion to Dismiss**

In their Motion, Defendants argue this Court should dismiss: (i) Mrs. Doe and the Doe Children's procedural due process claims, (ii) Mrs. Doe and the Doe Children's equal protection claims, (iii) the Doe Children's First Amendment claim, (iv) Plaintiff's First Amendment association/assembly/speech claim, and (v) the claims against the various Individual Defendants. (*See* ECF No. 43-20 at 3-4.)

*First*, Defendants argue Mrs. Doe and the Doe Children's procedural due process claims should be dismissed. (*Id.* at 22.) With respect to Mrs. Doe, Defendants contend that "to the extent [she] alleges a right to access District property, [her] claim must fail" because Plaintiffs "have [not] identified [any] state law, rule, or regulation that would confer a legitimate claim of entitlement to access District property. (*Id.*) In fact, Defendants argue "New York courts have readily held such a right does not exist." (*Id.*) (citing *Silano v. Sag Harbor Union Free School Dist. Bd. of Educ.,* 42 F.3d 719, 724 (2d Cir. 1994)). Defendants further maintain that "[e]ven a prohibition on attendance at school board meetings implicates no property or liberty interests." (*Id.*) (citing *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 207 (D. Conn. 2005)). Defendants contend that even if Mrs. Doe could allege the District deprived her of a liberty interest, her procedural due process claim is nonetheless precluded by the fact that Plaintiffs "had and failed to take advantage of a meaningful post-deprivation remedy available in the form of an Article 78 petition[,]" and, to this end, Mrs. Doe had the opportunity to challenge the restriction of her access to school premise. (*Id.*)

With respect to the Doe Children, Defendants acknowledge that "Courts have recognized that a plaintiff has a cognizable state-law property interest in education protected by the Fourteenth

18

Amendment." (*Id.* at 23) (citing *Smith v. Guilford Bd. of Educ.,* 226 Fed. Appx. 58, 62 (2d Cir. 2007)). However, Defendants argues that this type of claim must be dismissed where a plaintiff "fails to plead facts that demonstrate exclusion from the entire educational process." (*Id.*) (citing *D.C. by Conley v. Copiague Union Free Sch. Dist.*, 2017 WL 3017189, at *8 (E.D.N.Y. 2017) and *Martinetti v Mangan*, 2019 WL 1255955, at *7 (S.D.N.Y. 2019)). Defendants contend that the Doe Children were not excluded from the entire educational process, rather, the Children joined with ten other students to protest the State mask mandate in the wake of the January 24th Decision. (*Id.* at 23-24.)

Defendants maintain there are no allegations that the Doe Children were suspended, expelled, or otherwise excluded from the educational process over the two-day period that they attended school unmasked, by contrast, the District "still found a way to permit the [C]hildren in school" despite their non-compliance with the mask mandate. (*Id.* at 24.) Defendants further maintain that the Doe Children "cannot premise a liberty interest-based due process claim on a right to be protected from intimidation and harassment," and, like Mrs. Doe, they otherwise had an opportunity to challenge the District's policies and procedures in an Article 78 proceeding. (*Id.*) (citing *Doe by and through Doe v. East Irondequoit Central School District*, 2018 WL 2100605, * 20 (W.D.N.Y. 2018)).

*Second*, Defendants argue this Court should dismiss Mrs. Doe and the Doe Children's equal protection claims. (*Id.*) With respect to the Doe Children, Defendants argue that "there is no suspect class based on masking requirements, nor is there a fundamental right not to comply with a public mask mandate enacted for a public health crisis. (*Id.*) (citing *Mongielo v. Hochul*, 2023 WL 2307887, *16 (W.D.N.Y. 2023)). Defendants argue that Plaintiffs acknowledge the Doe Children were grouped with other unmasked students, the similarly situated comparators, and, as

such, "no equal protection claim can stand." (*Id*. at 25.) Defendants additionally argue that Mrs. Doe's equal protection claim is based upon retaliation for "First Amendment activity" and that such claim is "'completely duplicative of a First Amendment relation claim, and therefore, should not go forward.'" (*Id*.) (citing *Schulz v. Commack Union Free School District*, 664 F.Supp.3d 296 (E.D.N.Y. 2023)).

*Third*, Defendants argue that the Doe Children's First Amendment claims should be dismissed. (*Id*.) Defendants contend that mask wearing or refusing to wear a mask is not entitled to First Amendment protection. (*Id*.) Moreover, the mask mandate did not force the Doe Children to conceal their facial expressions or deprive them of their ability to communicate with one another. (*Id*. at 26.) Defendants maintain that intermediate scrutiny applies to First Amendment challenges to in-school mask mandates, and that the standard for intermediate scrutiny is met here because: (i) the State-mandated mask mandate was established to attempt to prevent the spread of the COVID-19 virus, and the mask mandate served not only a significant government interest, but a compelling one, as Courts have held that stemming the spread of COVID-19 is unquestionably a compelling interest, and (ii) the mask mandate was narrowly tailored to serve this government interest – rather than completely closing schools and requiring remote learning, cutting off in-person interaction altogether – Defendants contend the State chose to open the schools but have those entering the buildings wear masks. (*Id*. at 26-28.)

*Fourth*, Defendants argue that this Court should dismiss Plaintiffs' First Amendment association, assembly and petition claim. (*Id*. at 28.) Defendants contend that "'Courts have correctly held that mask requirements that individuals wear a mask in a place where people gather imposes at most a de minimis burden on [an] individual's ability to associate[,]'" and that there is no general right to social association. (*Id*. at 28) (quoting *Fradys v. Rondeau*, 2022 WL 1289674,

*3 (S.D.N.Y. 2022)). Defendants identify that Plaintiffs do not claim they were unable to assemble or associate, but they "merely claim they had to wear a face mask while doing so," an argument previously rejected by other Courts. (*Id*. at 28-29) (citing *Fradys*, 2022 WL 1289674, *3) ("Courts have held correctly that mask requirements do not violate the First Amendment because a requirement that individuals wear a mask in a place where people gather imposes at most a de minimis burden on individual's ability to associate.")

Even if Plaintiffs pleaded a cognizable freedom of association or assembly claim, Defendants contend that it would still fail under the constitutional analysis. (*Id*. at 29.) Specifically, Defendants argue that because mask mandates only place a *de minis* burden on an individual's ability to associate, they are subject to rational basis review. (*Id*. at 30.) Furthermore, Defendants argue that Mr. Doe cannot maintain a cause of action as "§ 1983 does not recognize a claim on behalf of one person arising from violating another's rights," and, according to Defendants, it follows that Mr. Doe "may not assert derivative claims based on alleged violations of his family members' civil rights under § 1983[,]" and, therefore, "[i]t follows that Mr. Doe may not assert derivative claims based on alleged violations of his family members' civil rights under § 1983." (*Id*.)

Defendants maintain that with regard to the right to petition the government, Mr. Doe has alleged "nothing more than sending a single email along with his wife . . . [h]owever, only Mrs. Doe was restricted from the property, which belies any claim of retaliation based on the email to the principal and teacher" and Mr. Doe has not otherwise "alleged any other potentially protected speech . . . [n]or have the [Doe] [C]hildren alleged any such protected speech." (*Id*.) Defendants further argue that to Mrs. Doe's association, assembly and petition claim is "duplicative" of her first cause of action for violation of her freedom of speech and should be dismissed. (*Id*.)

*Finally*, Defendants argue that the Court should dismiss the claims asserted against the various Individual Defendants. (*Id*. at 31.) Defendants contend the official capacity claims against the Trustees should be dismissed as duplicative of the claims against the District. (*Id*). Defendants further argue that the claims against the Trustees should be dismissed because: (i) the Amended Complaint "does not allege, with any factual specificity, that they were personally involved in any alleged constitutional violations[,]" and (ii) even if Plaintiffs had adequately alleged personal involvement, the personal capacity claims against the Trustees still fail on qualified immunity grounds. (*Id*. at 31-32.) Specifically, Defendants argue that to "avoid qualified immunity," Plaintiffs must show a "Supreme Court or Second Circuit case—or possibly even a 'robust consensus' of other Circuits—finding a constitutional violation under the facts presented here" (*i.e.,* "[P]laintiffs must show these higher courts held it unconstitutional to comply with state law by imposing a State-mandated face mask requirement in schools during a global pandemic."). (*Id*. at 34.)

Likewise, Defendants argue Principal O'Brien and Assistant Principal Azizollahoff should also be afforded qualified immunity from suit, because: (i) "[a]bsent specific allegations to the contrary, discretionary functions of a school principal should result in the application of qualified immunity from suit[,]" (ii) "[t]hey did not violate any clearly established right of which a reasonable person should have known[,]" (iii) "[e]ven if the plaintiffs could show such a right, it was objectively reasonable for the individual defendants to believe their acts did not violate the right[,]" and (iv) "they are not alleged, nor could they reasonably be alleged based on their positions, to have issued the ban from school property." (*Id*.)

B.    **Plaintiffs' Opposition**

In their Response in Opposition, Plaintiffs contend: (i) that their first amendment assembly, association and petition claims, and the Doe Children's first amendment claims are plausible, (ii) the Doe Children and Mrs. Doe's procedural due process claims are plausible, (iii) the Doe Children and Mrs. Doe's equal protection claims are plausible, and (iv) the claims against the Individual Defendants are proper and should not be dismissed. (ECF No. 44 at 3-4.) *First*, Plaintiffs argue that their First Amendment assembly, petition and association claim and the Doe Children's First Amendment claims are plausible. (*Id*. at 18.) Plaintiffs identify that in advance of a Board election, Defendant Salina precluded Mrs. Doe from attending all school related events and threatened her with further potential repercussions and promised to be monitoring Mrs. Doe's speech and activities, and, up until that point, Mrs. Doe had been a vocal and popular advocate among those opposing Salina, the Board, and O'Brien. (*Id*. at 19.)

Plaintiffs contend the ban was aimed in part at Mrs. Doe's rights of assembly and to petition and that Defendants intentionally waited to lift the ban until *after* the election. (*Id*.) Plaintiffs further contend that Ms. Doe "engaged in protected speech, including at Board meetings, online, and at the school," and,  "[r]egarding assembly and petition, Salina asserted that the [No Trespass] Letter was based on what Mrs. Doe was 'sharing about the schools on social media for months,' (ECF No. 32 at ¶ 152), and that he would be 'monitoring all forms of [Mrs. Doe's] communication here in Plainedge.'" (*Id*. at 20) (citing ECF No. 32 at ¶ 154). Plaintiffs argue there was a causal connection between Ms. Doe's speech and the retaliation, "the result of which included the chilling of her rights of assembly and to petition the government, especially during the coming Board election," and, therefore, Mrs. Doe has asserted a plausible claim for violation of her rights to assemble and petition. (*Id*.)

With respect to the Doe Children, Plaintiffs assert that their refusal to wear masks to school at a time when the mask mandate was in a state of legal flux (having been determined by the Supreme Court of New York to be unconstitutional, which Order was stayed pending appeal) amounted to symbolic speech, and further assert that they suffered discrimination for engaging in such speech. (*Id*. at 20.) Thus, Plaintiffs maintain "their protected First Amendment activity resulted in causally connected adverse action such that [the Doe Children] state a plausible claim for First Amendment speech violations." (*Id*. at 21.)

*Second*, Plaintiffs argue the Doe Children's and Mrs. Doe's procedural due process claims are plausible. (*Id*.) Plaintiffs argue that when Mrs. Doe reported that Child 1 was being bullied, no investigation occurred in keeping with procedural requirements and, instead, the bullying was permitted to continue unabated to the point where Child 1 would no longer attend school. (*Id*. at 22.) Plaintiffs argue that Defendants failure to investigate or otherwise address the bullying of Child 1 was "retaliatory, in whole or in part, due to Mrs. Doe's speech and the children's speech." (*Id*.) Specifically, Plaintiffs identify that the New York State Dignity for All Students Act ("DASA") provides, in pertinent part that "'[n]o student shall be subjected to harassment or bullying by employees or students on school property or at a school function. . .' and thus requires schools to act to protect students who are reportedly harassed[,]" and  in failing to do so, Defendants violated Child 1's due process rights. (*Id*.)

Plaintiffs further argue that the Doe Children were segregated and allegedly were deprived of any meaningful schooling when they did not wear masks following a Court decision that compulsory masking was unconstitutional, because: (i) on the first day, the children were given worksheets to do and were not taught by any teachers, were not provided any educational instruction or learning materials, and received no course of instruction that their classmates

24

received per the respective lesson plans, and (ii) they were not allowed to go to their special classes and were escorted if they had to go in the hall to the bathroom, unlike masked students, as if they were dangerous prisoners before eventually being brought into a classroom with masked students, and (iii) on subsequent days, the children were treated abusively to the point where they called home and were crying about the abuse, which effectively forced the children out of the school. (*Id.* at 22-23.) Plaintiffs maintain that "[n]o other district school punished unmasked students in any such way," and Defendant O'Brien refused to explain why she had the unmasked children segregated and treated "incongruently." (*Id.* at 23.) They argue that Defendants' action and inaction "effectively deprived [Doe Children] of the entirety of their schooling" such that their procedural due process claim is viable. (*Id.*)

With respect to Mrs. Doe's procedural due process claim, Plaintiffs argue her ban from school property was "completely arbitrary," "executed at the whim of the Superintendent," and did not otherwise "comport with the District's policy regarding allegations of visitor misconduct on school premises." (*Id.* at 23-24.) Under the District's policy, Plaintiffs contend the Superintendent has no authority to issue a ban on parents, rather, a series of procedures exists for warning and removing a visitor, and banning is not an option. (*Id.* at 24.) Thus, Plaintiffs argue Mrs. Doe's procedural due process rights were violated when she was banned from the School. (*Id.*)

*Third*, Plaintiffs argue Mrs. Doe and the Doe Children's equal protection claims are viable under a "class-of-one theory." (*Id.* at 24.) (citing *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 198 (2d Cir. 2019) (quoting *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221 (2d Cir. 2012)) ("[T]he Supreme Court has also … endorsed 'a class-of-one theory for equal protection claims, under which a single individual can claim a violation of her Equal Protection rights based

on arbitrary disparate treatment.'"). Plaintiffs contend the Doe Children were treated differently than masked children, and that Child 1 was treated unequally with other victims of bullying regarding the District's failure to perform a DASA investigation, in violation of their equal protection rights. (*Id*. at 25.) Plaintiffs maintain that "[c]onsequently, with respect to the [Doe] Children's equal protection allegations, there is heightened scrutiny which must be applied since they were engaged in First Amendment protected activity at the time they were treated less favorably than masked students under the law." (*Id*.)

Specifically, Plaintiffs assert: (i) Defendants "treated the Children and other unmasked protesting students like pariahs, and essentially gave them no educational benefit to their day," while "[u]nmasked children in other District schools were not segregated whatsoever," and (ii) "[n]o evidence existed that the [Doe] Children presented any special danger and, indeed, during lunch they were allowed to sit with all other students, who also were unmasked for lunch." (*Id*.) Plaintiffs argue "[n]o rational basis existed to treat the Children in such manner as compared to masked students in the school, and other unmasked students within the District, who were not segregated from masked students at all." (*Id*. at 26.) With respect to Mrs. Doe's equal protection claims, Plaintiffs argue she was "continuously, systematically, and maliciously deprived of her civil rights, privileges, and immunities," because she was precluded from attending a reading at the School by Defendant O'Brien after being specifically permitted by both Salina and Ms. Mento to attend and was ultimately banned from school property. (*Id*.) Plaintiffs maintain there is no rational basis for such disparate treatment. (*Id*.)

*Finally*, Plaintiffs argue their claims against the Individual Defendants are proper and should not be dismissed. (*Id.* at 27.) Plaintiffs contend the Trustees were "fully aware of the circumstances of the allegations, they passively sat by [while] the [P]laintiffs' rights were violated,

and they otherwise stood to benefit from Mrs. Doe's improper ban from all school premises." (*Id.*) Specifically, Plaintiffs contend that "the acts and omissions of the [Trustees] in their official capacities provide the foundational basis for holding the [Trustees] liable for their tortious acts." (*Id.*) Plaintiff argue the "official acts of the [Trustees], Salina, O'Brien, and Azizollahoff, all can be said to have been undertaken at a time, place, and manner which may fairly be said to represent official policy that inflicted injury on the [P]laintiffs[,] and, therefore, "the claims against them in their official capacities are necessary for protecting the [P]laintiffs' rights to pursue the [Trustees] for damages related to the harms caused by such individuals' violations of the [P]laintiffs' constitutional rights." (*Id.*)

### C.    <u>Defendants' Reply in Further Support</u>

In their Reply in Support, Defendants argue that: (i) Plaintiffs "abandoned" several claims, (ii) Plaintiff's First Amendment association, assembly, and petition claims should be dismissed, (iii) the Court should dismiss the Doe Children's First Amendment free speech claim, (iv) the Court should dismiss Mrs. Doe and the Doe Children's procedural due process claims, (v) the Court should dismiss Mrs. Doe and the Doe Children's equal protection claims, and (vi) the Individual Defendants should be dismissed. (ECF No. 45-2 at 2.)

*First*, Defendants contend that Plaintiffs "failed to substantively address most of Defendants' many arguments in opposition[,]" and, therefore, Counts II, VI, and VII should be "rendered abandoned" and dismissed. (*Id.* at 5.) Defendants maintain that "[i]t is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims" and "[e]ven if a plaintiff responds to some legal arguments in opposition to a motion to dismiss, the failure to respond to each of a defendant's arguments will render that cause of action abandoned." (*Id.*) Specifically, for Mrs. Doe's

procedural due process claim, Defendants contend that Plaintiffs do not respond to Defendants' argument that her failure to pursue Article 78 relief precludes this claim, and, for Mrs. Doe's equal protection claim, Plaintiffs do not respond to Defendants' argument this claim is "completely duplicative" of her First Amendment retaliation claim. (*Id.* at 6.) With respect to Plaintiffs' association/assembly/petition claim under the First Amendment, Defendant argues that Plaintiffs only respond to Defendants' argument regarding Mrs. Doe's claim, and not to the arguments against Mr. Doe's and the Doe Children's claim, and, as such, all aforementioned claims should be considered abandoned and dismissed. (*Id.*)

*Second*, Defendants argue that Mrs. Doe's association/assembly/petition claim under the First Amendment should be dismissed. (*Id.*) Defendants reiterate that Plaintiffs assert Mrs. Doe's rights to assembly and petition were violated by the No Trespass Letter, which states: "Due to your continued erratic behaviors, failure to comply with the District's Code of Conduct, and your disrespectful and threatening behaviors, you are no longer permitted on the property of any Plainedge School District facility *without the express written consent of the Superintendent of Schools for any reason*." (*Id.* at 6-7.) Defendants contend that Ms. Doe acknowledges she requested permission to attend school events/functions and was permitted to attend some but not all such events before the ban was lifted in June 2022, and, "[C]ourts in this jurisdiction faced with similar situations have deemed 'permission requirements' to enter school district grounds do not violate the First Amendment. (*Id.* at 7) (citing *Hansen v. Watkins Glen Cent. Sch. Dist.*, 2019 U.S. Dist. LEXIS 117131, *15 (W.D.N.Y. July 15, 2019) and *Jones v. Bay Shore Union Free Sch. Dist.*, 666 F. App'x 92 (2d Cir. 2016)).

*Third*, Defendants argue that the Court should dismiss the Doe Children's First Amendment free speech claim. (*Id.* at 7.) Defendants contend that "[w]hile observing that the Third

Circuit has determined refusing to wear a mask is not protected speech, Plaintiffs fail to cite one case to support their position that such conduct is protected by the First Amendment" and "[s]imultaneously ignore Defendants' cited caselaw explicitly providing that mask wearing or refusing to wear a mask is not entitled to First Amendment protection." (*Id.* at 7-8.) (citing *Mongielo v. Hochul*, 2023 WL 2307887, *9-10 (W.D.N.Y. 2023) and *L.T. v. Zucker*, 2021 U.S. Dist. LEXIS 196906, *5 (N.D.N.Y. Oct. 13, 2021)). To the extent refusing to wear a mask is considered "protected speech," Defendants maintain their actions "survive intermediate scrutiny standards; stemming the spread of COVID-19 is unquestionably a compelling interest, and the mask mandate was narrowly tailored to serve this government interest." (*Id.* at 8.)

*Fourth*, Defendants argue that Mrs. Doe's and the Doe Children's due process claims should be dismissed because they are not viable. (*Id.*) While Plaintiffs argue that Mrs. Doe's "banishing" from District property "did not comport with the District's policy regarding allegations of visitor misconduct on school premises[,]" Defendants claim that Plaintiffs do not identify any District policy that confers her unfettered access to District property, and therefore, Plaintiffs have not identified any such state law, rule, or regulation that would confer a legitimate claim of entitlement to access District property, such that Mrs. Doe's procedural due process claim fails. (*Id.*) With respect to the Doe Children, Defendants argue that Plaintiffs do not sufficiently argue they were excluded from the *entire* educational process. (*Id*. at 9.)

Defendants argue the January 24, 2022 Decision and Order by Justice Rademaker declaring 10 NYCRR § 2.60 (which at the time continued the school mask mandate) void and unenforceable, was stayed immediately the next day, January 25, 2022, the SED Commissioner also released a statement on January 25, 2022 indicating the school mask mandate remained in effect, and on January 28, 2022, SED released another statement indicating the Appellate Division, Second

Department issued "a stay order which upheld the Department of Health's mask requirement in schools (10 NYCRR 2.60)[,]" and, therefore, when the Doe Children attended school without masks on January 27 and January 28, 2022, "they contravened a mandate that the District was obligated to abide by." (*Id*.) As a result, Defendants claim the Doe Children and all other unmasked students were segregated and instructed away from masked students for those two days, which "can hardly be considered an 'exclusion from the entire educational process.'" (*Id*.)

Defendants further argue that the Supreme Court "'has been clear that there is no mandatory set of formal procedures required for challenging academic decisions,'" (*id*.) (quoting *Marino v. City Univ. of New York,* 18 F. Supp. 3d 320, 337 (E.D.N.Y. 2014), and "courts in this jurisdiction have held that alternative means of education in similar contexts does not equate to an actionable due process claim." (*Id*. at 10) (citing *Collins v. City Univ. of New York*, 2023 U.S. Dist. LEXIS 21587, *26-27 (S.D.N.Y. Feb. 8, 2023), *Patrick v. Success Acad. Charter Schs., Inc.,* 354 F. Supp. 3d 185, 216 (E.D.N.Y. 2014), and *Mac Ineirghe v. Bd. of Educ.*, 2007 WL 2445152, at *19 (E.D.N.Y. Aug. 22, 2007)). To this end, Defendants contend the Doe Children have no procedural due process claim. (*Id*.)

*Fifth*, Defendants argue the Court should dismiss Mrs. Doe and the Doe Children's equal protection claims. (*Id*.) With respect to Mrs. Doe, Defendants contend that Plaintiffs did not respond to Defendants' argument that Mrs. Doe's equal protection claim is duplicative of her First Amendment claim, and therefore, her equal protection claim should be abandoned. (*Id*.) As to the Doe Children, Defendants reject Plaintiffs' "class-of-one" equal protection theory for the claim because "[t]he Doe children and other unmasked students did not abide by the in-effect mandate, and so for two days were separated from students for large portions of the day" which, according to Defendants, "was a rational decision by District administrators." (*Id*. at 11.) Defendants further

30

argue that a class-of-one claim requires Plaintiffs to meet a high burden by showing the children were "virtually identical" to those to whom they compare themselves, and, "[a]side from Plaintiff's blanket assertions, no specific examples of unmasked students being treated more favorably are provided[,]" rather, "Plaintiffs acknowledge the Doe Children were grouped and treated similarly to about ten other unmasked students, who are the similarly situated comparators in all material respects here" and "[t]hey do not claim they were treated any differently than these students." (*Id*.)

*Finally*, Defendants contend "Plaintiffs either failed to respond to or ceded the legitimacy of Defendants' arguments seeking the removal of the individual Defendants from suit." (*Id*. at 11-12.) Defendants argue that "Plaintiffs admit the claims against the Trustees in their official capacities is redundant" and they "also do not contend any individual Defendant should be held liable in an individual capacity[,]" rather, "Plaintiffs only vaguely assert the official actions/omissions of the [Trustees] and administrators 'represent official policy that inflicted injury on the [P]laintiffs.'" (*Id*.) To this end, Defendants maintain that "Plaintiffs do not rebut Defendants' contention that the individual capacity claims against the Trustees and principals fail on qualified immunity grounds" and Plaintiffs "cannot [otherwise] show, a Supreme Court or Second Circuit case finding a constitutional violation under the facts presented here." (*Id*.)

## DISCUSSION

## I.     The Legal Framework

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter

of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

"[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556– 57 (internal citations omitted)). When considering a motion to dismiss, the Court assumes all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. *Id.*

## II.    First Amendment Assembly, Association and Petition (Count II)

The crux of Plaintiffs' First Amendment assembly, association, and petition claim is that in issuing the No Trespass Letter, which prohibited Mrs. Doe from entering "the property of any Plainedge School District facility without the express written consent of the Superintendent of Schools for any reason" (ECF No. 45-1 at 1-2), Defendants interfered with the Plaintiffs' rights of assembly, association, and to petition the government. *See* ECF No. 32 at ¶ 199 (Count II alleges Defendants "target[ed] and punish[ed] Mrs. Doe with the No Trespass [L]etter and advis[ed] her that all of her speech was being monitored, in violation of her rights protected by the First and Fourteenth Amendments of the United States Constitution, which then had a chilling effect on her

and all the [P]laintiffs thereafter, including their ability to speak, write or associate with those deemed by [D]efendants to be opposed to [D]efendants' policies and/or practices.").

While the Amended Complaint asserts Count II on behalf of all Plaintiffs, it is radio silent as to how Mr. Doe's rights of assembly, association, and petition were violated (*see* generally, ECF No. 32), and "Mr. Doe may not [otherwise] assert derivative claims based on alleged violations of his family members' civil rights under § 1983." *See* ECF No. 43-20 at 30; *see also T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11 CV 5133 VB, 2012 WL 860367, at *3 (S.D.N.Y. Feb. 27, 2012) (collecting cases) ("Section 1983 does not recognize a claim on behalf of one person arising from a violation of another person's rights. Blondel Patterson cannot recover on any derivative claim based on a Section 1983 civil rights or Title IX violation simply because she is T.P.'s mother."). Therefore, Mr. Doe "cannot assert any federal claims." *Id.* And, with respect to the Doe Children, Plaintiffs do not set forth allegations as to how Defendants interfered with their rights to assemble, associate and petition the government that, the Court finds, are not otherwise duplicative of their First Amendment retaliation claim, which is addressed below (*see infra*, Section V. First Amendment Retaliation (Count V)). *See e.g.*, *Schulz v. Commack Union Free Sch. Dist.*, 664 F. Supp. 3d 296, 310 (E.D.N.Y. 2023) (dismissing claims duplicative of First Amendment retaliation).

To this end, for the purposes of the instant Motion to Dismiss, the Court considers the very narrow question of whether the No Trespass Letter violated Mrs. Doe's rights to assemble, associate, and petition the government under the First Amendment.[6] *See e.g.*, *Hansen v. Watkins Glen Cent. Sch. Dist.*, No. 17-CV-6143-FPG-JWF, 2019 WL 3113309, at *5 (W.D.N.Y. July 15,

---

[6] The Court does not consider whether the No Trespass Letter violated Mrs. Doe's freedom of speech under the First Amendment because, as stated, Defendants are not moving to dismiss Count I of the Amended Complaint.

2019), *aff'd*, 832 F. App'x 709 (2d Cir. 2020). ("In her first cause of action, Hansen alleges that Phillips's Permission Requirement violated her First Amendment right to attend public Board meetings and sporting events at the school.").

### A.    The Right to Assemble and Associate[7]

"The First Amendment prohibits the government from 'abridging the freedom of speech, or of the press,' and guarantees 'the right of the people to peaceably assemble.'" *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017) (quoting U.S. Const. Amend. 1.). "[G]overnment officials may stop or disperse public demonstrations or protests where 'clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears.'" *Papineau v. Parmley*, 465 F.3d 46, 56-57 (2d Cir. 2006) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940)). However, "'nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.'" *Johnson*, 859 F.3d at 171 (quoting *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 799-800 (1985)).

"Where there is no clear and present danger, 'speech restrictions imposed on persons on government-owned property are analyzed under a 'forum-based' approach that divides

---

[7] "Expressive association protects the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly, the exercise of religion, or petitioning for the redress of grievances." *Hone v. Cortland City Sch. Dist.*, 985 F. Supp. 262, 272 (N.D.N.Y. 1997). As Plaintiffs' assembly and association claims both arise out of the District's issuance of the No Trespass Letter, the Court addresses the them together. *McCook v. Spriner Sch. Dist.*, 44 F. App'x 896, 910 (10th Cir. 2002) (quoting *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 678 (2000)) ("The Supreme Court has recognized, 'a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.... [W]hen the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association ... may be implicated.'").

government property into three principal categories—the traditional public forum, the designated public forum, and the nonpublic forum,' along with 'a subset of the designated public forum,' referred to as the 'limited public forum[.]'" *Id*. (quoting *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010)) (cleaned up). "A school is generally considered a non-public forum, as it is 'a place in which the government 'does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission to use it.'" *Nowacki v. Town of New Canaan*, No. 3:12-CV-01296 JCH, 2013 WL 785355, at *5 (D. Conn. Mar. 1, 2013) (quoting *DeFabio v. E. Hampton Union Free Sch. Dist.,* 658 F.Supp.2d 461, 473 (E.D.N.Y.2009)). However, "when a school opens itself up to the public for Board meetings or sporting events, it becomes a limited public forum." *Hansen*, No. 17-CV-6143-FPG-JWF, 2019 WL 3113309, at *5 (citing *Johnson*, 859 F.3d at 175) (holding a gymnasium being used for interschool basketball games to which the public is invited constitutes as limited public forum); *Nowacki v. Town of New Canaan*, No. 3:12-CV-01296 JCH, 2013 WL 785355, at *5 (D. Conn. Mar. 1, 2013) (internal citations omitted) (The events to which [plaintiff] claims he has been restricted access are classified properly under the 'non-public forum' category because they are held on school property. Certain events, [however,] such as the parenting events, conceivably could fall under the limited public forum category, if they are events where access is restricted for specific purposes or to select individuals.").

"For a limited public forum, the government may make content-based exclusions for speech that does not 'fall within the category of uses to which the forum has been opened, so long as those exclusions satisfy the viewpoint-neutral and reasonableness criteria' applicable to speech in a non-public forum." *Nowacki*, No. 3:12-CV-01296 JCH, 2013 WL 785355, at *5–6 (quoting *Make The Road by Walking, Inc. v. Turne*r, 378 F.3d 133, 143 (2d Cir.2004)). That is, "[i]n a

limited public forum, regulations governing the content of speech are allowed, so long as they are 'reasonable' and 'viewpoint-neutral.'" *Johnson*, 859 F.3d at 172 (quoting *Peck ex rel. Peck v. Baldwinsville Central School District*, 426 F.3d 617, 625-26 (2d Cir. 2005), *cert. denied*, 547 U.S. 1097 (2006)); *Foote v. Bd. of Educ. of Whitehall Cent. Sch. Dist.*, No. 1:22-CV-0815 (GTS/CFH), 2024 WL 3376651, at *17 (N.D.N.Y. July 11, 2024) (citing *Johnson*, 859 F.3d at 175-76) ("[A]gain, even where no such clear and present danger exists, a government actor may still restrict First Amendment rights in a limited public forum where the restriction is reasonable and viewpoint-neutral.").

Regardless of whether the "school-related events" (ECF No. 44 at 19) to which Mrs. Doe claims she has been restricted access to are classified as non-public or limited public fora, the Court finds the Amended Complaint fails to allege that Defendants violated her right to assembly and association in issuing the No Trespass Letter. Ms. Doe's Amended Complaint "alleges deprivation of [her] First Amendment right of peaceable assembly in a single cause of action," however, her claim "has multiple aspects[:]" *first*, Mrs. Doe "complains that [the District] barred [her]" from school property in general, and *second*, that the District denied her access to "school-related events" that she requested permission to attend– specifically, her child's soccer event on February 4, 2022, and the "Someone Special Dance" on February 11, 2022, at the Eastplain Middle School.[8] *See* ECF No. 32 at ¶ 151-152; *Johnson*, 859 F.3d at 172. "Each aspect warrants particularized analysis." *Id*. As an initial matter, the Second Circuit has made clear that a parent *does not* have a "general and unlimited First Amendment right of access to school property." *Johnson*, 859 F.3d 156 at 175 (internal citations omitted) (cleaned up) ("Given the responsibility

---

[8] The Amended Complaint does not state explicitly that the Board of Education meetings were held at the School, and, even if they were, it does not allege that Mrs. Doe was denied access to a Board meeting following the District's issuance of the No Trespass Letter. *See generally*, ECF No. 32. Moreover, it does not allege Mrs. Doe was denied the right to vote in the Board Election. *Id*.

of school officials to prevent the kind of boisterous and threatening conduct that would interrupt the peace and quiet and disturb the tranquility required for the academic aspects of a school's functions, we cannot conclude that a parent has a general and unlimited First Amendment right of access to school property.")

In fact, "courts have found no constitutional violation where individuals have been banned from school property." *Kadri v. Groton Bd. of Educ.*, No. 3:13-CV-1165 JCH, 2014 WL 1612492, at *5 (D. Conn. Apr. 22, 2014) (collecting cases) (holding that the board did not violate plaintiff's right to assembly by banning him from school property, and noting that the ban "did not deprived him of the right to vote, to attend public hearing, and to petition for redress of grievances before his local government, in violation of the First Amendment."); *see e.g.*, *Nowacki*, No. 3:12-CV-01296 JCH, 2013 WL 785355, at *7 (internal citations omitted) (cleaned up) (finding the New Canaan Board of Education did not violate plaintiff's First Amendment right to assembly when they placed restrictions on his ability to access school property and noting that "with respect to the First Amendment, public secondary and elementary school administrators are granted more leeway than even public colleges and universities. Accordingly, school officials have the authority and responsibility for assuring the parents and third parties conduct themselves appropriately while on school property."); *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999) (upholding a ban prohibiting a disruptive and threatening parent from entering school property); *Hansen.*, No. 17-CV-6143-FPG-JWF, 2019 WL 3113309, at *5 (citing *Johnson*, 859 F.3d at 175) ("[P]arents do not have a 'general and unlimited First Amendment right of access to school property'"); *Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 433 (E.D.N.Y.), *aff'd*, 666 F. App'x 92 (2d Cir. 2016) ("[B]ecause the undisputed facts demonstrate the existence of a longstanding directive banning Plaintiff from District property and the inherent duty and authority of schools to ensure the safety

of its students, there is no basis for finding a constitutional violation against Plaintiff[.]"); *McCook v. Spriner Sch. Dist.,* 44 Fed. Appx. 896, 910 (10th Cir .2002) ("*McCook*") (the right to freedom of assembly was not violated even where parents "were not allowed to attend Board meetings or to go on school property for any school or community event[,]" and noting that the parents had "presented no authority establishing a constitutional right to go onto school property").

The Court further notes that the "restrictions placed on the parents in *McCook* were far more restrictive than what [Mrs. Doe] alleges here, as [she] concedes that [she] was permitted on [District] property at certain times for certain events." *See* ECF No. 45 at 6-7 ("Mrs. Doe acknowledges she requested permission to attend school events/functions and was permitted to attend some but not all such events before the ban was lifted in June 2022"); *Nowacki*, No. 3:12-CV-01296 JCH, 2013 WL 785355, at *7 ("Yet, the *McCook* [C]ourt found that those more restrictive conditions did not violate the freedom to assembly."). To this end, because Mrs. Doe "has not otherwise presented any authority establishing a constitutional right to go onto school property[,]" the Court finds that Defendants did not violate her First Amendment right to assembly when they placed restrictions on her ability to access school property in general. *Id.*

"Drawing all inferences in [Mrs. Doe's] favor, [as stated], the Amended Complaint appears to [additionally] allege that [her] right to freedom of assembly was violated when [D]efendants restricted [her] access to school property" to attend "school-related events." *Nowacki*, No. 3:12-CV-01296 JCH, 2013 WL 785355, at *7. "However, again, [the Court finds] the Amended Complaint fails to plausibly allege" – nor do Plaintiffs argue in their brief – "that this restricted access was not reasonable or viewpoint neutral." *Id.* To be sure, "[i]n a limited public forum, the reasonableness analysis turns on the particular purpose and characteristics of the forum and the extent to which the restrictions on speech are 'reasonably related' to maintaining the environment

the government intended to create in that forum.'" *Tyler v. City of Kingston*, 74 F.4th 57, 63 (2d Cir. 2023) (quoting *Hotel Emps. & Rest. Emps. Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 554 (2d Cir. 2002)). "To survive First Amendment scrutiny, the restriction need not be the most reasonable or the only reasonable limitation imaginable, but simply consistent with the government's legitimate interest in preserving the property for the use to which it is lawfully dedicated." *Foote*, No. 1:22-CV-0815 (GTS/CFH), 2024 WL 3376651, at *18 (internal citations omitted) (cleaned up).

Here, the forum was, as stated, a soccer event and the "Someone Special Dance" at the Eastplain Middle School. "Conduct at such events by participants, school personnel, and spectators is regulated by various District policies[,]" including the masking policy, and Defendant Salina "referred to such policies broadly and generally" in the No Trespass Letter informing Plaintiff of the ban, stating that Mrs. Doe's conduct on January 26, 2022 and January 28, 2022 violated the District's Code of Conduct:

> It is our determination that the manner by which you conducted yourself while on school premises at the Eastplain Elementary School on two separate occasions is in direct violation of the District's Code of Conduct. On Wednesday, January 26, 2022 you entered the Eastplain Elementary School and refused to wear a mask when directed by Principal O'Brien, which is in violation of a NYS mandate and in violation of the District Code of Conduct. Additionally, on Friday, January 28, 2022 you entered the Eastplain Elementary School and demanded to see Principal O'Brien immediately. Our staff asked you to wait until she was available, however you decided this was unacceptable and placed a 911 call to the Nassau County Police Department (NCPD), seeking emergency support by police officers at the school, although there was no criminal activity taking place.
>
> On both occasions, you spoke disrespectfully to Principal O'Brien, and sent several text and email messages, demanding she submit to you in writing, the location of your children who were in an alternate classroom as a result of not wearing a mask as mandated by the New York State Department of Health and NYSED. You expressed anger that your children were not permitted to use their cell phone in class to communicate with you, a violation of the District's Code of Conduct for students. We do not permit students to use cell phones while in class unless authorized by teachers for instructional purposes but, we did provide access to a phone for your child to call you which was located in our Nurse's Office when they requested to speak with you.

> Your inappropriate behaviors demonstrated your willful intent to disrupt the orderly conduct of classes, school programs, another violation of our District Code of Conduct. The scene you created, including raising your voice on numerous occasions was heard by staff and students passing by in the hallway and was alarming and upsetting to both the children and staff. Your conduct towards Principal O'Brien, our Security Officers and Greeter, constitute harassment, as they felt threatened by your tone of voice and your irrational behaviors.
>
> Due to your continued erratic behaviors, failure to comply with the District's Code of Conduct, and your disrespectful and threatening behaviors, you are no longer permitted on the property of any Plainedge School District facility without the express written consent of the Superintendent of Schools for any reason.

*Foote,* No. 1:22-CV-0815 (GTS/CFH), 2024 WL 3376651, at *18; ECF No. 45-1 at 1-2.

"The use for which the forums were lawfully dedicated in this case" is the playing of student soccer games and for parent-sponsored dances, and "[Mrs. Doe] does not raise any arguments that the Defendants lacked a legitimate interest in regulating conduct that could interfere with the well-being and safety of student[s,] players, personnel, and spectators[,] [and others] attending such event[s]." *Id*. And, the Court finds Mrs. Doe's prior non-compliance with District Code and New York State law "enough to warrant exclusion from future athletic events" and dances, pursuant to District Code guidelines, such that that "Defendants' choice to exclude [Mrs. Doe] from [these] school events" was not unreasonable, particularly in light of the New York state mask mandate that was in place – and the ongoing COVID-19 pandemic – at the time the events occurred. *Id*.; *see also Hansen v. Watkins Glen Cent. Sch. Dist.*, 832 F. App'x 709, 713 (2d Cir. 2020) ("[A] parent can lawfully be restricted from school activities based on a risk of disruption or safety concerns as long as those concerns are not a pretext for viewpoint discrimination," and "a requirement that a parent receive prior permission to enter school property is a minor and reasonable response to such concerns.").

The Court additionally finds that the No Trespass Letter was view-point neutral. "[A] rule is neutral as to viewpoint if it is 'based only upon the manner in which the speakers transmit their messages . . . and not upon the messages they carry.'" *Tyler v. City of Kingston*, 593 F. Supp. 3d 27, 32 (N.D.N.Y. 2022) (quoting *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 645 (1994)). The No Trespass Letter, issued January 30, 2022, just a few days following the January 26th and January 28th incidents, "cites the fact that Plaintiff's conduct was found to violate [D]istrict policy as well as [New York State law]." *Foote,* No. 1:22-CV-0815 (GTS/CFH), 2024 WL 3376651, at *19. The Letter specifically indicates that Defendant Salina was aware that Mrs. Doe: (i) entered the Eastplain Elementary School on January 26, 2022 and refused to wear a mask when directed to by Principal O'Brien, and (ii) harassed and threated school officials and "disrupt[ed] the orderly conduct of classes" by calling the Nassau County Police Department on January 28, 2022 when "no criminal conduct occurred." *See* ECF No. 45-1 at 1-2. Mrs. Doe "has offered nothing but [her] own speculation that the true basis of Defendants' [permissive] ban was [her] expressed viewpoint about [the District's masking policy or other political topics] rather than the nature of the words and actions through which [s]he communicated that viewpoint." *Foote,* No. 1:22-CV-0815 (GTS/CFH), 2024 WL 3376651, at *19; *Hansen*, No. 17-CV-6143-FPG-JWF, 2019 WL 3113309, at *5 (the permission requirement to enter school grounds "was a content-neutral response to [plaintiff's] attempt to circumvent the school's security protocol.").

To this end, because the Amended Complaint fails to allege that the No Trespass Letter was issued based on the viewpoints Mrs. Doe expressed regarding the mask mandate and other political topics, rather than the conduct she displayed on January 26, 2022 and January 28, 2022, her "claim for a violation of [her] First Amendment right of assembly" fails as a matter of law. *See id*. (finding "Plaintiff's ban from school events for the rest of the relevant school year was not

based on the viewpoints that he expressed about Defendant[s]" rather, it was based on "the conduct he displayed following the basketball game on January 24, 2022[,]" and as a result, "Plaintiff's claim for a violation of his First Amendment right of assembly" could not "succeed."); *see also Kadri*, No. 3:13-CV-1165 JCH, 2014 WL 1612492, at *5 (dismissing plaintiff's assembly claim where he "fail[ed] to plausibly allege that his ban from school property was not reasonable or viewpoint neutral" and "cited no authority establishing a constitutional right to go onto school property").

## B.    The Right to Petition the Government

The First Amendment provides that the government cannot abridge the right of the people to 'petition the Government for a redress of grievances.'" *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568, 593 (S.D.N.Y. 2010) (quoting U.S. Const. amend 1.) "The Supreme Court has made clear that the 'right to petition [is] one of 'the most precious of liberties safeguarded by the Bill of Rights.'" *Id*. (quoting *BE & K Constr. Co. v. Nat'l Labor Relations Bd.*, 536 U.S. 516, 524 (2002)). The "right to petition is cut from the same cloth as the other guarantees of [the First] Amendment." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). "Among other things, the right to petition protects '[t]he rights to complain to public officials and to seek administrative and judicial relief.'" *Id*. (quoting *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir.1994)).

However, the "right to petition government afforded by the First Amendment does not include the absolute right to speak in person to officials. Where written communications are considered by government officials, denial of a hearing does not infringe upon the right to petition. The right to petition government does not create in the government a corresponding duty to act." *Cronin v. Town of Amesbury,* 895 F.Supp. 375, 389–90 (D.Mass.1995), *aff'd,* 81 F.3d 257 (1st Cir.1996); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 375 (N.D.N.Y.), *aff'd,* 83 F. App'x

363 (2d Cir. 2003). Here, the Court finds Mrs. Doe's First Amendment right to petition for redress of her grievances has similarly not been violated "because [D]efendants afforded [her] the opportunity to submit her grievances in writing," and, as explained further below (*see infra*, Section III.A), "[s]he was given full opportunity to redress [her] grievances in an appropriate forum." *Prestopnik v. Whelan*, 253 F. Supp. 2d at 375; *Kadri*, No. 3:13-CV-1165 JCH, 2014 WL 1612492, at *5. As such, this claim is also dismissed.

## III.    **Procedural Due Process (Counts III and VI)**

"In order to make out a claim for procedural or substantive due process violation, the plaintiff must show that he has been deprived of a property or liberty interest." *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, No. CV 93-1924 (ADS), 1993 WL 762110, at *5–6 (E.D.N.Y. Dec. 10, 1993), *aff'd*, 42 F.3d 719 (2d Cir. 1994) (citing *General Electric. v. New York State Dept. of Labor,* 936 F.2d 1448, 1453 (2d Cir.1991)). "The existence of such interests 'depends on state law rules or understandings that secure certain benefits and support claims of entitlement.'" *Id.* (citing *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)). "There must be a certain 'concreteness of entitlement' to the right." *Id.* (quoting *Walentas v. Lipper,* 862 F.2d 414, 419 (2d Cir.1988), *cert. denied,* 490 U.S. 1021 (1989)); *see also Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 207 (D. Conn. 2005) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976)) and *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996)) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. Therefore, '[t]o award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law.'").

To this end, to succeed on their procedural due process claim, a plaintiff must: "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation and emphasis omitted); *Roth v. Farmingdale Pub. Sch. Dist.*, No. 14CV6668JFBARL, 2017 WL 395211, at *18–19 (E.D.N.Y. Jan. 30, 2017) ("[A] claimed violation of procedural due process involves a two-step analysis: (1) the court examines whether the State deprived plaintiff of a constitutionally protected interest, and (2) if so, the court determines whether the procedures surrounding that deprivation were constitutionally adequate."); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted) ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies.").

 "With respect to the second prong, ordinarily no pre-deprivation process is required so long as there exists an adequate post-deprivation remedy." *Roth*, No. 14CV6668JFBARL, 2017 WL 395211, at *19; *Attallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 458 (E.D.N.Y. 2015) ("In sum, because an adequate post-deprivation remedy exists for review of plaintiff's expulsion, there can be no Fourteenth Amendment violation to support a Section 1983 claim."); *Silano*, No. CV 93-1924 (ADS), 1993 WL 762110, at *5–6 (quoting *Kraebel v. New York City Dep't of Housing Preservation & Development*, 959 F.2d 395, 404 (2d Cir.), *cert. denied,* 113 S.Ct. 326 (1992)) ("'[I]f the deprivation is caused by random, unauthorized state conduct and an adequate post-deprivation hearing is available, there is no denial of 'due process', and therefore, no constitutional violation on which to base a § 1983 claim.'").

A.    **Mrs. Doe's Procedural Due Process Claim**

Plaintiffs allege Mrs. Doe was punished by Defendants "without due process . .  by virtue of the issuance of a No Trespass [L]etter without any procedural mechanisms in place for a full and fair hearing, to be confronted with the evidence on which it was based, and without any right to appeal." ECF No. 32 at ¶ 220. Here, "state law does not give any property or liberty interest to [Mrs. Doe] to enter the school grounds" and "Plaintiffs do not [otherwise] identify any District policy that confers her unfettered access to District property." *See* ECF No. 45-2 at 2; *Silano*, No. CV 93-1924 (ADS), 1993 WL 762110, at *5–6. The Superintendent's No Trespass Letter "forbidding [Ms. Doe] from entering school grounds [without the express written consent of the Superintendent] also fails to implicate a protected liberty or property interest." *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 724 (2d Cir. 1994) ("*Silano*"). With respect to this point, the Second Circuit's decision in *Silano* is illustrative. In *Silano*, the Court held a Superintendent's order forbidding a school board member from entering the school grounds failed to implicate a protected liberty or property interest:

> Property and liberty interests protected by the Due Process Clause are ordinarily created and defined by state law. As a Board of Education member, [Plaintiff] did not have an unrestricted right to enter the school classrooms or hallways during school hours. Moreover, the Superintendent's memorandum specifically provided [Plaintiff] with access to all facilities necessary for him to function as a member of the Board. Therefore, the district court was correct in its conclusion that the Superintendent's order did not deprive [Plaintiff] of any property or liberty interest conferred upon him by his status as a member of the Board of Education.

*Silano*, 42 F.3d at 724 (internal citations omitted) (cleaned up); *see also Piscottano*, 396 F. Supp. 2d at 187 (First selectman of town board of selectman did not deprive citizen of constitutionally protected liberty interest at board meeting, for purpose of citizen's civil rights procedural due process claim, by preventing citizen from commenting on possible unethical conduct of high level town employee during unrestricted "public comment" portion of regularly scheduled meeting).

Plaintiffs contend the No Trespass Letter "did not comport with the District's policy regarding allegations of visitor misconduct on school premises" and "[u]nder such policy, the Superintendent has no authority to issue a ban on parents. Rather, a series of procedures exists for warning and removing a visitor. Banning is not in the Plainedge School District Code of Conduct." ECF No. 44 at 24.[9] Initially, the Court notes that the No Trespass Letter was issued as a result of the District's finding that Mrs. Doe possessed a "willful intent to disrupt the orderly conduct of classes, school programs" and violated the District Code of Conduct, and, the Letter was not an outright ban – rather, Mrs. Doe was "no longer permitted on the property of any Plainedge School District facility without the express written consent of the Superintendent," for a few months' time, and Mrs. Doe was in fact permitted entry on school grounds with permission on several occasions following issuance of the Letter. ECF No. 45-1 at 1-2; *see e.g., Pearlman v. Cooperstown Cent. Sch. Dist.*, No. 3:01-CV-504, 2003 WL 23723827, at *3 (N.D.N.Y. June 11, 2003) ("Further, Plaintiff was provided with access to the school property when he requested it on all but three occasions. On these three occasions, McPhail concluded she could not prevent contact between Plaintiff and MB or her younger sister."); *Jones v. Bay Shore Union Free Sch. Dist.*, 666 F. App'x 92, 94–95 (2d Cir. 2016) ("*Jones*") (emphasis in original) (Jones has no protected right to access school property, and, "[w]hile there may be a protected interest in attending school board meetings, the school district does not categorically bar Jones from attending; it simply requires that he provide advance notice before doing so. Especially considering the school district's interest in protecting students from a person who was discharged from teaching for suspected sexual

---

[9] Plaintiffs do not cite to – or provide the Court with – the specific District policy provision(s) upon which they rely.

misconduct with minors, any interest Jones may have in attending board meetings *without providing advance notice* is de minimis and insufficient to sustain a due process claim.").[10]

Moreover, the Second Circuit previously rejected similar arguments to Plaintiffs' in *Silano*:

[Plaintiff] contends that the Superintendent's visitation ban deprived him of a liberty interest conferred by School District Policy No. 3210 (1989) ("Policy 3210"). Policy 3210 states that the Board of Education 'welcome[s] members of the community and other interested persons to visit the schools.' Pursuant to this policy, the Superintendent is authorized to establish regulations to 'encourage visitors' while 'insur[ing] that such visits will enhance the effect of the educational program rather than hinder it.' The policy also requires visitors to 'sign in' at the main office and explain their presence, and obtain permission from the school principal before visiting classrooms.

To create a constitutionally protected liberty interest, a state regulation must employ language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed. It is only through the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates that a liberty interest arises.

Applying these standards, we conclude that Policy 3210 does not vest the public with a protected liberty interest in visiting Sag Harbor schools. The policy does not impose any obligations upon school officials. The only mandatory language in the policy statement is directed toward visitors, requiring them to 'sign in' and explain their presence, and to obtain permission in advance if they wish to visit a classroom. Moreover, by requiring visitors to 'sign in' and explain their presence, this policy clearly contemplates that certain types of visits and visitors would be inappropriate in the school environment, thus calling for school officials to exercise their discretion. In fact, the policy specifically authorizes the Superintendent to establish regulations to ensure that visits do not 'hinder' the educational program. For these reasons, we cannot say that the School District's general policy of welcoming visitors created a liberty interest protected by the Due Process Clause. We therefore agree with the district court that the temporary ban on [Plaintiff's] visits to the Sag Harbor schools did not violate his due process rights.

---

[10] The Second Circuit further noted in *Jones* that "[t]o the extent Jones relies on the very brief period in which he *was* categorically barred from school board meetings, the ban's quick reversal establishes that it was based on a random act by an employee rather than on an 'established state procedure.' Jones could have brought an Article 78 proceeding to challenge that temporary ban. The presence of 'a meaningful post deprivation remedy' for a deprivation not pursuant to 'established state procedure' means that the Due Process Clause was not violated." *Jones*, 666 F. App'x at 95 (quoting *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996) and citing N.Y. Pub. Off. Law § 107).

*Silano*, 42 F.3d at 724–25.

Accordingly, the Court finds Plaintiffs have failed to identify any state law, rule, or regulation that would confer a legitimate claim of entitlement to access District property. *See e.g.*, *Roth*, No. 14CV6668JFBARL, 2017 WL 395211, at \*19 ("[U]nder New York law, a plaintiff does not have a constitutionally protected liberty interest in accessing school property. Thus, to the extent that plaintiff asserts a liberty interest in accessing the District's property, plaintiff's Fourteenth Amendment fails as a matter of law."); *Hone v. Cortland City Sch. Dist.*, 985 F. Supp. 262, 272 (N.D.N.Y. 1997) ("Looking to New York State law, the Court can find no support for the proposition that Plaintiff enjoyed any right of access to school property."); *Pearlman*, No. 3:01-CV-504 (TJM), 2003 WL 23723827, at \*3 ("Plaintiff does not, however, cite to any state law or authority granting him unfettered access to school property, either as a citizen or a parent. Indeed, … local school districts have great discretion in determining who shall have access to school property and school students.").

Even if Mrs. Doe alleged the District deprived her of a liberty interest, "her procedural due process claim is nonetheless precluded" because she "had and failed to take advantage of a meaningful post-deprivation remedy available in the form of an Article 78 petition[,]" and, therefore "had the opportunity to challenge the restriction of her access to school premise[:]"

> Here, a meaningful post-deprivation remedy existed under Article 78 of the New York Civil Practice Laws and Rules ("Article 78"). It is well-settled that an Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit. Thus, generally speaking, the availability of an Article 78 proceeding bars seeking relief under Section 1983 when there is an adequate state post-deprivation procedure to remedy a random or arbitrary deprivation of property or liberty.

ECF No. 43-20 at 22; *Roth*, No. 14CV6668JFBARL, 2017 WL 395211, at *19 (internal citations omitted) (cleaned up); *see e.g.*, *Jones*, 666 F. App'x at 95 (noting plaintiff could have brought an Article 78 proceeding to challenge a temporary ban from school property).

As such, because Mrs. Doe "could have challenged the District's decision to prohibit [her] from its building and grounds by commencing an Article 78 proceeding in New York State court[,]" the Court finds "a constitutionally adequate post-deprivation procedure [existed for] [Mrs. Doe] to challenge [D]efendants' conduct under New York law[,]" and, therefore, her due process claim fails as a matter of law. *Roth*, No. 14CV6668 (JFB)(ARL), 2017 WL 395211, at *20 ("[P]laintiff's Due Process claim fails as a matter of law because he has not identified a constitutionally protected interest, and a constitutionally adequate post-deprivation procedure enabled plaintiff to challenge defendant's conduct under New York law.").

### B.    The Doe Children's Procedural Due Process Claims

Plaintiffs assert the Doe Children were denied procedural due process when they were segregated along with other unmasked children from the masked children at school "without any due process or procedure in place to determine the propriety of such punishment." *See* ECF No. 32 at ¶ 203. While "there is no substantive due process right to a public education, 'the property right granted to [the Doe Children] as [] public school student[s] under New York law is a sufficient interest for a procedural Due Process claim[.]'" *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16CV4546SJFAYS, 2017 WL 3017189, at *8–9 (E.D.N.Y. July 11, 2017) (quoting *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 339 (E.D.N.Y. 2014)). However, although the Doe Children "may have a cognizable property interest in a free and appropriate public education, in order to state a Section 1983 procedural due process claim, [they] must demonstrate [they were] deprived in some manner of [that] property interest by Defendants' conduct." *Tyrrell*

*v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 630 (E.D.N.Y. 2011) (internal citations omitted) (cleaned up). Specifically, the Doe Children must show they were "'excluded from the entire educational process.'" *D.C. by Conley*, No. 16CV4546 (SJF)(AYS), 2017 WL 3017189, at *9 (quoting *Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 72 (W.D.N.Y. 1997) ("*Mazevski*"). As Chief Judge Larimer of the Western District further explained in *Mazevski*:

> In *Goss v. Lopez,* the Supreme Court held that a state must 'recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause.' However, in *Goss,* the Supreme Court spoke in terms of the total 'educational process.' Therefore, under *Goss,* the property interest which is protected by the Due Process Clause is the right to participate in the entire educational process and not the right to participate in each individual component of that process. Accordingly, it is only when a student is excluded from the entire educational process that due process must be afforded. His exclusion from a particular course, event or activity is of no constitutional import.

*Mazevski*, 950 F. Supp. at 72. (cleaned up) (quoting *Goss v. Lopez,* 419 U.S. 565, 574-576 (1975)) ("*Goss*") (noting that "total exclusion" from the educational process includes expulsion and suspension from school for "more than a trivial period")[11].

Here, the Doe Children do not allege that they were "ever suspended, expelled, or otherwise [completely] excluded from the educational process in any manner." *D.C. by Conley*, No. 16CV4546 (SJF)(AYS), 2017 WL 3017189, at *8–9. Rather, they voluntarily "joined with ten other students to protest the State mask mandate in the wake of the January 24th Decision" (ECF No. 43-20 at 23-24), and attended school without masks on January 27 and January 28, 2022, in

---

[11] In *Goss*, "the Supreme Court set forth minimal due process requirements attendant to the imposition of suspensions of ten days or fewer. Specifically, the Court held that: 'Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.'" *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 318 (E.D.N.Y. 2016) (citing *Goss*, 419 U.S. at 581).

direct contravention "[of] a mandate that the District was obligated to abide by." ECF No. 45-2 at

9. As a result, the Doe Children – and all other unmasked students – were instructed away from

masked students for those two days, which, the Court finds, cannot be considered "exclusion from

the entire educational process" as envisioned by *Goss* and its progeny. *See e.g.*, *Collins v. City*

*Univ. of New York*, No. 21 CIV. 9544 (NRB), 2023 WL 1818547, at *10 (S.D.N.Y. Feb. 8, 2023)

(plaintiff cannot show a constitutional deprivation of a property interest because he has not been

expelled, but rather must attend his classes online as a consequence of his decision to not become

vaccinated in accordance with his school's vaccination policy); *Patrick v. Success Acad. Charter*

*Sch., Inc.*, 354 F. Supp. 3d 185, 214 (E.D.N.Y. 2018) (internal citations omitted) (cleaned up)

("[C]ourts have found that the suspension itself constitutes a property deprivation" under *Goss*,

and, "[b]y contrast, there is a second line of cases in which courts have found that where a student

is not deprived of classroom instruction during his or her suspension, the student has not been

deprived of a property interest. [Specifically,] courts have found that the primary thrust of the

educational process is classroom instruction, and, therefore, when classroom instruction or its

equivalent is provided during a suspension, there is no due process violation."); *Mac Ineirghe v.*

*Bd. of Educ. of E. Islip Union Free Sch. Dist.*, No. 05-CV-4324 (JFB)(AKT), 2007 WL 2445152,

at *19 (E.D.N.Y. Aug. 22, 2007) (plaintiff was not deprived of a property interest during a one-

day in-school suspension because he "received instruction from a classroom teacher and received

his school work."); *Saggio v. Sprady*, 475 F. Supp. 2d 203, 210 (E.D.N.Y. 2007) (citing N.Y. Educ.

L. § 3202(1)) ("Plaintiff claims that she was deprived of her right to an education without due

process when she was 'coerced' into utilizing home tutoring for a short period of time. However,

the primary distinction between *Goss* and the instant case, of course, is that plaintiff was not

suspended. No disciplinary charges were filed against her. No accusation of wrongdoing was made

against her. Most importantly, the District did not exclude her from attending school. It thus cannot be said that the District infringed upon her right to an education.").

Plaintiffs argue that the Doe Children were "effectively deprived of the entirety of their schooling" because (i) "on the first day, the children were given worksheets to do and were not taught by any teachers, were not provided any educational instruction or learning materials, and received no course of instruction that their classmates received per the respective lesson plans," and (ii) "they were not allowed to go to their special classes and were escorted if they had to go in the hall to the bathroom," and (iii) "on subsequent days, the children were treated abusively to the point where they called home and were crying about the abuse, which effectively forced the children out of the school." ECF No. 44 at 22-23. However, the Court finds the alleged "interference with [Doe Children's] liberty or property interest" – *i.e.*, providing them with worksheets to complete for one day in an alternative classroom with other unmasked students – "is *de minimis*" at best, "and thus due process is not implicated." *Wise v. Pea Ridge Sch. Dist.,* 855 F.2d 560, 563 n. 3 (8th Cir.1988) (holding an in-school suspension does not exclude the student from school and consequently a student's property interest in a public education is not implicated); *Mac Ineirghe*, No. 05-CV-4324 (JFB)(AKT), 2007 WL 2445152, at *19 (quoting *Goss,* 419 U.S. at 576) (collecting cases) ("Under *Goss,* due process requirements do not apply where the property interest at issue is '*de minimis.*' The liberty or property interest involved in a one-day in-school suspension where the student receives instruction is *de minimis.*").

Furthermore, the Court notes that this "is not a case where [the Doe Children were] suspended from school without notice or a hearing. Rather, [they were] not suspended at all." *Saggio*, 475 F. Supp. 2d 203, 210–12. They ultimately made the decision to protest the mask mandate, which made them ineligible to attend regular in-person classes under New York State

law and District policy, and the District provided them with an alternative means of education for a two-day period. "From a procedural standpoint, there could be no more process to which [Plaintiffs were] due." *Saggio*, 475 F. Supp. 2d at 212. Accordingly, the Court finds "neither the District nor the Individual Defendants actually deprived [the Doe Children] of a cognizable property interest, and therefore need not consider the adequacy of the process resulting in any such deprivation." *D.C. by Conley*, No. 16CV4546SJFAYS, 2017 WL 3017189, at *8–9. Thus, Plaintiffs' procedural due process claims fail as a matter of law and Counts III and VI are dismissed.[12]

## IV.    **Equal Protection (Counts IV and VII)**

The Equal Protection clause of the Fourteenth Amendment requires that the government treat all similarly situated people the same. *Cox v. N.Y. State Dep't of Corr.*, 2023 U.S. Dist. LEXIS 79442 (N.D.N.Y. 2023). Generally, for a plaintiff to prevail on an Equal Protection Clause claim under the Fourteenth Amendment, plaintiff must demonstrate that: (1) there was "a law that

---

[12] The Court notes that Plaintiffs' additional claim that Child 1's procedural due process rights were violated when the alleged bullying against him was "not investigated in keeping with appropriate procedure" (ECF No. 32 at ¶ 204) conflates procedural due process with substantive due process. *See e.g.*, *C.T.*, 201 F. Supp. 3d at 319 ("Plaintiffs argue that their substantive due process rights were violated because, despite their many complaints about J.T.'s treatment, defendants did not prevent the ongoing bullying"). "Substantive due process is a means of protection of the individual against arbitrary action of government. In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (internal citations omitted) (cleaned up). "Even if defendants were unable to end the bullying or [P]laintiffs considered [D]efendants' response to their grievances to be inadequate," the Court finds Plaintiffs have not alleged "[D]efendants' actions were sufficiently egregious or outrageous to support a substantive due process violation." *Id.* at 19; *Smith v. Guilford Bd. of Educ.*, 226 F. App'x 58, 61–62 (2d Cir. 2007) (internal citations omitted) (cleaned up) ("Defendants' failure to respond to the harassing and bullying to which Jeremy was subjected (taking Plaintiffs' assertions to be true), while highly unfortunate, does not rise to the level of egregious conduct so brutal and offensive to human dignity as to shock the conscience."); *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 CS, 2012 WL 4477552, at *9 (S.D.N.Y. Sept. 27, 2012) ("While I do not minimize how difficult that must have been for LB, if Defendants sat back and did nothing to address the behavior—an assumption belied by the AC—it is not plausible that these circumstances were so unbearable that LB was *forced* to withdraw from the School."). Moreover, Plaintiffs do not allege the specific procedure Defendants were required to – and allegedly failed – to follow in response to the bullying of Child 1. Therefore, this claim is dismissed as well.

expressly classifies on the basis of [a protected category]"; (2) "a facially neutral law or policy that has been applied in an unlawfully discriminatory manner;" or (3) "a facially neutral policy that has an adverse effect and that was motivated by discriminatory animus." *Alsaifullah v. Furco*, No. 12-cv-2907 (ER), 2013 U.S. Dist. LEXIS 110398, at *25 (S.D.N.Y. Aug. 2, 2013).

But the standard differs, where, as here, Plaintiffs allege "class-of-one" theories, in other words, where they have been singled out as a class of one and not based on "class-based discrimination." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (U.S. 2008). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves[:]"

> [E]qual protection claims based on a so-called "class of one" theory involve claims where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. A plaintiff asserting a selective enforcement or class-of-one claim must present evidence of similarly situated comparators.

*Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006); *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 430–33 (E.D.N.Y. 2021) (internal citations omitted) (cleaned up). To this end, to succeed under a class-of-one theory, Ms. Doe and the Doe Children must demonstrate that they were "*intentionally* treated differently" from others similarly situated and that "there *is no rational basis* for the difference in treatment." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (emphasis supplied).

*Au fond,* Mrs. Doe and the Doe Children fail to plausibly allege Defendants violated the Equal Protection Clause. With respect to Mrs. Doe, Count VII specifically alleges she "was treated differently from all other citizens in the District" including, but not limited to, banning her from the School, "because she spoke up and objected to the policies and procedures within the District's schools as was her right, and without threat or intimidation." ECF No. 32 at ¶¶ 227-228. "As

[P]laintiff[s] observe [], a defendant may violate the Equal Protection Clause by alleging selective treatment 'motivated by an intention to punish or inhibit the exercise of constitutional rights.'" *Schulz v. Commack Union Free Sch. Dist.*, 664 F. Supp. 3d 296, 310 (E.D.N.Y. 2023) (quoting *Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019)).[13]

"Here, though, the only constitutional right that [Mrs. Doe] has alleged [D]efendants sought to punish or inhibit through their retaliatory acts is a First Amendment right." *Id.* "When a plaintiff is 'attempting to assert an equal protection claim based upon retaliation for First Amendment activity...such a claim is completely duplicative of the First Amendment retaliation claim and, therefore, should not go forward.'" *Id.* (quoting *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 518 (E.D.N.Y. 2011)) (citation omitted) (collecting cases); *see e.g.*, *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 484 (E.D.N.Y. 2019) (collecting cases) ("Courts in the Second Circuit have dismissed equal protection claims that merely restate First Amendment retaliation claims."). Accordingly, because the Court finds Mrs. Doe's equal protection claim is based on alleged retaliation for engaging in activity protected by the First Amendment, the Court finds it duplicative of her First Amendment retaliation claim (Count I), and therefore dismisses Count VII.

---

[13] Plaintiffs acknowledged at oral argument that a selective enforcement theory may apply here but is not otherwise alleged in the Amended Complaint nor identified in Plaintiffs' Response in Opposition. *See* ECF No. 47. In any event, the Court finds that even if pled, a selective enforcement claim would fail as a matter of law under the facts alleged. To proceed on a selective enforcement claim, Mrs. Doe "must plead: 1) that [s]he was treated differently than other 'similarly situated' individuals; and 2) 'that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Jones*, 666 F. App'x at 94 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)). Even if the Court were to find that Ms. Doe sufficiently "alleges that the selective enforcement was impermissibly motivated by retaliation," and finds her claim is not otherwise duplicative of Count I (*see* infra), her selective enforcement claim nevertheless "fails to allege *why* other individuals were similarly situated to [her]." *Id.* "H[er] bare allegation that others were similarly situated is insufficient to survive a motion to dismiss." *Id.*

With respect to the Doe Children, Count IV specifically alleges the Doe Children were "treated differently than masked children by O'Brien and Azizollahoff and [treated] differently than unmasked children in other District schools, in violation of their 14th Amendment rights to Equal Protection under the United States Constitution, all with the intent to retaliate and punish them for the free speech exercised by Mrs. Doe and themselves[.]" ECF No. 32 at ¶ 209. As stated, "Plaintiffs do not claim to be a member of a protected class, [and, therefore,] they must make a threshold showing that they were treated differently from similarly situated comparators." *Everest Foods Inc. v. Cuomo*, 585 F. Supp. 3d 425, 441 (S.D.N.Y. 2022) (citing *Airday v. City of New York*, 131 F. Supp. 3d 174, 184 (S.D.N.Y. 2015)). "That is, they must 'allege the existence of similarly situated comparators' who received more favorable treatment." *Id.* (quoting *Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135 (E.D.N.Y. 2013)). Here, the Doe Children advance "two classes of comparators" – "masked children" and "unmasked children in other District schools" (ECF No. 32 at ¶ 209) – "neither of which are similarly situated." *Id.*

"Their failure to make the required threshold showing is fatal to their claims." *Id.*; *see e.g.*, *Janfeshan v. U.S. Customs & Border Prot.*, 2017 WL 3972461, at *11 (E.D.N.Y. Aug. 21, 2017) ("[I]f a plaintiff is not identical or nearly identical to his comparators, there is no basis for a fact finder to conclude that the difference in treatment was not based on a permissible governmental purpose."); *Amid v. Vill. of Old Brookville*, No. CV 11-3800, 2013 WL 527772, at *6 (E.D.N.Y. Feb. 7, 2013) ("Plaintiff's Complaint (despite the fact that it has already been amended) fails completely to plead the requisite existence of similar homeowners subject to treatment more favorable than that received by Plaintiff. Despite the fact-intensive nature of the Complaint, there is no real pleading of any similarly situated comparator.").

In fact, Plaintiffs concede that Doe Children "were grouped and treated similarly to about ten other unmasked students, who are the similarly situated comparators in all material respects here" and "[t]hey do not claim they were treated any differently than these students." ECF No. 45-2 at 11. Accordingly, because Plaintiffs fail to provide specific examples of unmasked students their School being treated more favorably, their equal protection claim fails as a matter of law and the Court dismisses Count IV.[14] *See e.g.*, *20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 22CV4047ARRLGD, 2023 WL 3571239, at *4 (E.D.N.Y. May 19, 2023), *aff'd*, No. 23-930, 2024 WL 1597642 (2d Cir. Apr. 12, 2024) ("Because plaintiffs have failed to plausibly allege that they were treated differently from a similarly situated comparator, the equal protection claims are dismissed.").

## V.    First Amendment Retaliation (Count V)

As stated, Plaintiffs assert the Doe Children "engaged in symbolic speech by their attending school without a mask" following the District's implementation of the mask mandate, and, as a result, were "swiftly punished via segregation and then progressively more harsh treatment" by school officials for "exercising their First Amendment rights." *See* ECF No. 32 at ¶ 215. In other words, they claim (i) "refusing to wear a mask . . . is itself expressive conduct entitled to First Amendment protection" and (ii) that Defendants retaliated against the Doe Children for exercising their First Amendment rights in refusing to wear a mask. *Mongielo v. Hochul*, No. 22-CV-116-LJV, 2023 WL 2307887, at *10 (W.D.N.Y. Mar. 1, 2023) ("*Mongielo*").

To state a First Amendment retaliation claim, Plaintiffs must show: "(1) [they have] a right protected by the First Amendment; (2) [Defendant's] actions were motivated or substantially

---

[14] Count IV additionally alleges that Child 1 "was treated differently than other alleged bullying victims in the District." ECF No. 32 at ¶ 209. However, Plaintiffs proffer no specific examples of other children who were bullied in the District and the treatment they received by School officials. Accordingly, this claim additionally fails as a matter of law. *See e.g.*, *Amid*, No. CV 11-3800, 2013 WL 527772, at *6.

caused by his exercise of that right; and (3) [Defendant's] actions caused [them] some injury." *Dorsett v. Cnty. of Nassau,* 732 F.3d 157, 160 (2d Cir. 2013); *Rankel*, 999 F. Supp. 2d at 541 (internal quotations omitted) ("On a motion to dismiss, the court must be satisfied that such a claim is supported by specific and detailed factual allegations, which are not stated in wholly conclusory terms."); *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 712 (S.D.N.Y. 2011) (internal quotations omitted) ("To succeed on their First Amendment retaliation claim[,] Plaintiffs must plausibly allege that their conduct was protected by the First Amendment, and that Defendants' conduct was motivated by or substantially caused by their exercise of free speech."). "The Court must 'conduct an inquiry into whether plaintiff's speech was actually chilled by the retaliatory conduct.'" *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 341 (E.D.N.Y. 2010) (quoting *Saleh v. City of N.Y.*, No. 06–CV–1007, 2007 WL 4437167, at *3 (S.D.N.Y. Dec. 17, 2007)).

Relevant here, the First Amendment "protects not only 'the spoken or written word'" – "[i]t also applies to some conduct in some settings, as circumstances matter." *Falcone v. Dickstein*, 92 F.4th 193, 206 (3d Cir.), *cert. denied sub nom. Murray-Nolan v. Rubin*, 144 S. Ct. 2560 (2024) ("*Falcone*") (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("*Johnson*") and citing *United States v. O'Brien*, 391 U.S. 367, 376 (1968) ("*O'Brien*"). "The Supreme Court has limited First Amendment protections to what it has called 'inherently expressive' conduct." *Id*. (quoting *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 66 (2006)). "To qualify, an action must satisfy two elements[:]" (i) "the actor must 'inten[d] to convey a particularized message," and (ii) "there must be a high 'likelihood' that 'the message [will] be understood by those who view[ ] it." *Id*. (quoting *Johnson*, 491 U.S. at 404). "The first element does not pose a high bar, but the second is trickier. That is so because a viewer must be able to understand the message from the conduct alone." *Id*. "If some 'explanatory speech is necessary,' the conduct does not warrant

protection; otherwise, a party 'could always transform conduct into 'speech' simply by talking about it.'" *Id.* (quoting *Rumsfeld*, 547 U.S. at 66).

"Against this backdrop[,]" the Court first considers whether the Doe Children's refusal to wear a mask is constitutionally protected conduct.[15] *Falcone*, 92 F.4th at 207. The Third Circuit recently answered this very question in *Falcone*. *Id*. Specifically, the Court considered at length "whether the First Amendment protect[ed] [plaintiff's] refusal to wear a COVID mask at a Board meeting when doing so was required by an Executive Order implemented by Board policy." *Id*. The Court answered in the negative, finding that refusing to wear a mask was not "symbolic speech" entitled to First Amendment protection:

> [Plaintiff demonstrated] intent to convey a particularized message [because] alleged she refused to wear a mask to 'silent[ly] protest' the Board and Superintendent's 'lack of action related to unmasking children in schools, particularly those with medical conditions and special needs.' Her mask refusal, she explains, was a sign of 'solidarity with all such children in protesting the Board's violation of their civil rights.' [However, Plaintiff] cannot satisfy the second element because it is unlikely that a reasonable observer would understand her message simply from seeing her unmasked at the Board meeting. She claims that, 'in the then-existing political climate[,] refusing to wear a mask itself was an overt political statement.' We have no doubt that, during the pandemic, some people refused to wear a mask to send a political message. But the problem for [Plaintiff] is that going maskless is not usually imbued with symbolic meaning.
>
> The Governor's Executive Order, for example, exempted individuals from the masking requirement for medical reasons. How would attendees know that [Plaintiff] was unmasked not because she was medically exempt but because she intended to express her dismay with the Board's inaction related to unmasking of school children? They wouldn't, unless they were aware of her vocal protests predating her maskless appearance at the meeting.

---

[15] In support of their Motion to Dismiss the Doe Children's First Amendment free speech claim, Defendants heavily rely on Western District's decision in *Mongielo* and the Northern District's decision in *L.T. v. Zucker*, 2021 WL 4775215, at *4 (N.D. N.Y. Oct. 13, 2021) ("*L.T.*"), both of which, the Court finds, do not directly address this issue. In both *Mongielo* and *L.T.*, the plaintiffs argued that "the mask mandate violated their children's free speech rights" because "masks suppress and conceal facial expressions, which are a form of communication used to express oneself and to decode others' emotional states or reactions." *Mongielo*, No. 22-CV-116-LJV, 2023 WL 2307887, at *10. They did not argue, as Plaintiffs do here, that "mask-wearing—or refusing to wear a mask—is itself expressive conduct entitled to First Amendment protection." *Id*.; *see also L.T.*, No. 1-21CV1034(LEK)(DJS), 2021 WL 4775215, at *5 ("Here, Plaintiffs do not argue that mask wearing itself is speech. Rather, they claim that the mask regulation affects a distinct course of conduct, their attempts to physically show facial expressions and use certain vocal modulation.").

Furthermore, how would attendees know what particularized message [Plaintiff] sent by refusing to wear a mask? Was it general defiance of the government? Skepticism toward government health experts? Opposition to the Governor's mask mandate? Or, as she alleges, opposition to the Board's and Superintendent's 'lack of action related to unmasking children in schools, particularly those with medical conditions and special needs'? Again, her message was susceptible to multiple interpretations, and understanding it required additional explanatory speech.

*Id*. (internal citation omitted) (cleaned up). The Court further opined:

Unlike burning a flag, wearing a medical mask—or refusing to do so—is not the type of thing someone typically does as a form of symbolism. The American flag is inherently symbolic. A medical mask is not. It is a safety device – protective equipment used to protect the wearer from particles or from liquid contaminating the face." To combat COVID-19, people wear it to curb the spread of an airborne disease. Skeptics are free to—and did—voice their opposition through multiple means, but disobeying a masking requirement is not one of them. One could not, for example, refuse to pay taxes to express the belief that "taxes are theft." Nor could one refuse to wear a motorcycle helmet as a symbolic protest against a state law requiring them. The binary choice envisioned by [Plaintiff]—either disobeying the Executive Order mandating the wearing of a protective mask or not speaking at all—is a false one. We thus agree with the District Court that her refusal to wear a mask was not constitutionally protected.

*Id*. at 207-08.

Like the plaintiff in *Falcone*, the Doe Children have shown intent to covey a particularized message (*i.e.*, that their refusal to wear a mask was done in protest of the State's mask mandate and the District's enforcement thereof), however, the Court finds they have not adequately alleged how reasonable observers would have known what "particularized message" they were intending to send in their refusal to wear a mask – and, for the same reasons articulated in *Falcone*, concludes that the Doe Children's refusal to wear a COVID-19 mask at school when doing so was mandated by the District and New York State law is not conduct protected by the First Amendment. *Johnson*, 491 U.S. at 404.

"Every court [across the country] to address the issue has reached the same conclusion." *Falcone*, 92 F.4th at 208. *See e.g.*, *Stewart v. Just.*, 502 F. Supp. 3d 1057, 1066 (S.D.W. Va. 2020) (internal citations omitted) (cleaned up) (noting that "[i]n deciding whether particular conduct

possesses sufficient communicative elements to bring the First Amendment into play, the Supreme Court has asked whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it" and finding that while "Plaintiffs feel that refusing to wear a face covering expresses 'nonconformity with unconstitutional and un-American laws,'" that meaning is not "overwhelmingly apparent."); *Minnesota Voters All. v. Walz*, 492 F. Supp. 3d 822, 837–38 (D. Minn. 2020) (holding plaintiffs' refusal to wear mask indoors in violation of COVID-19 executive order is not "inherently expressive" conduct protected by the First Amendment, and further noting, "[a]bsent explanation, the observer would not know whether the person is exempt from [the executive order], or simply forgot to bring a face covering, or is trying to convey a political message."); *Antietam Battlefield KOA v. Hogan*, 461 F.Supp.3d 214, 237 (D. Md. 2020) ("[E]specially in the context of COVID-19, wearing a face covering would be viewed as a means of preventing the spread of COVID-19, not as expressing any message."); *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *13 (S.D. Fla. Aug. 30, 2021), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, No. 21-CIV-60723, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021), *aff'd sub nom. Zinman v. Nova Se. Univ., Inc.*, No. 21-13476, 2023 WL 2669904 (11th Cir. Mar. 29, 2023) ("[N]either wearing or not wearing a mask is inherently expressive. In the context of COVID-19, wearing a mask does not evince an intent to send a message of subservience to authority – or any message at all."); *Whitfield v. Cuyahoga Cnty. Pub. Libr. Found.*, No. 21 CV 0031, 2021 WL 1964360, at *3 (N.D. Ohio May 17, 2021) ("[W]earing a mask is not a symbolic or expressive gesture. It is a health and safety measure put into effect in many public establishments to prevent the spread of COVID-19 to employees and other patrons."); *Nowlin v. Pritzker*, No. 20-CV-1229, 2021 WL 669333, at *5 (C.D. Ill. Feb. 17, 2021), *aff'd as modified*, 34 F.4th 629 (7th Cir. 2022)

("Plaintiffs challenge orders that regulate non-expressive conduct such as keeping certain distance[s], wearing masks, and limiting gathering sizes. These activities are not speech[,] and regulations that govern non-expressive conduct do not bring the First Amendment into play."); *Reinoehl v. Whitmer*, No. 1:21-CV-61, 2022 WL 1110273, at *1 (W.D. Mich. Feb. 3, 2022), *report and recommendation adopted*, No. 1:21-CV-61, 2022 WL 855266 (W.D. Mich. Mar. 23, 2022), *aff'd*, No. 22-1343, 2023 WL 3046052 (6th Cir. Apr. 17, 2023), *cert. denied*, 144 S. Ct. 221, 217 L. Ed. 2d 79 (2023) (refusal to comply with Michigan's Face Mask Order did not constitute symbolic speech); *Sehmel v. Shah*, 514 P.3d 1238, 1243-44 (Wash. Ct. App. 2022) ("[W]earing or not wearing a mask is not sufficiently expressive so as to implicate First Amendment protections. ... [T]here is a host of reasons why a person may not be wearing a mask."); *L.T.*, No. 121CV1034 (LEK)(DJS), 2021 WL 4775215, at *5 ("[T]he conduct that is regulated, wearing of a mask, has repeatedly been held to not constitute protected speech.").

"Even if not wearing a face covering was inherently expressive, [the mask mandate at issue here] is clearly constitutional." *Minnesota Voters All.*, 492 F. Supp. 3d at 838. Under the Supreme Court's decision in *O'Brien*, "a government regulation is sufficiently justified" if: (i) "it is within the constitutional power of the Government;" (ii) "if it furthers an important or substantial governmental interest;" (iii) "if the governmental interest is unrelated to the suppression of free expression;" and (iv) "if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id*. (citing *O'Brien*, 391 U.S. at 377). *First*, "[t]here is no question that [New York] has the constitutional authority to enact measures to protect the health and safety of its citizens." *Id*. (citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905)) (states retain general police power to enact reasonable regulations to protect public health and safety). *Second*, "there is no question that [the mask mandate] furthers the substantial

government interest in controlling the spread of a deadly and highly contagious disease[,]" [a]s federal health officials recommend face coverings as an effective way to slow the spread of COVID-19." *Id*. Finally, as to the third and fourth factors, the mask mandate "is unrelated to the suppression of free expression and has at most an incidental effect on First Amendment freedoms that is no greater than necessary; [P]laintiffs are free to express their opinions about [the mandate] in every conceivable way *except* by violating its provisions and putting at risk the lives and health of their fellow citizens." *Id*.

Therefore, to the extent refusing to wear a mask is considered "protected speech," Defendants' actions in enforcing the mask mandate within the School nonetheless "survive intermediate scrutiny standards" because "stemming the spread of COVID-19 is unquestionably a compelling interest, and the mask mandate was narrowly tailored to serve this government interest[,]" as it "did not force the Doe Children to conceal their facial expressions or deprive them of their ability to communicate with one another" and allowed students to attend in-person classes safely.  *See* ECF Nos. 45-2 at 8; 43-20 at 26; *see also Mongielo*, No. 22-CV-116-LJV, 2023 WL 2307887, at *10 (upholding a state-wide mask mandate enacted during the COVID-19 pandemic and finding the mandate "was issued to regulate conduct—mask-wearing—not to regulate communication via facial expression[,] . . . [s]o it was a conduct-regulating mandate of general application that perhaps imposed an incidental burden on the exercise of free speech. [I]t did not single out those engaged in expressive activity; rather, it applied to almost all state residents who were present in public places. Therefore, even if the [] mandate incidentally affected the [school] children's ability to communicate, it did not implicate the Free Speech Clause."); *L.T.*, No. 121CV1034 (LEK)(DJS), 2021 WL 4775215, at *12 ("Plaintiffs have not shown they are likely to

succeed in establishing that the conduct at issue falls under the protective umbrella of the First Amendment or, even if it does, that the mask mandate would not pass intermediate scrutiny.").

To this end, because Plaintiffs cannot show the Doe Children's refusal to wear a mask is "a right protected by the First Amendment[,]" *Dorsett,* 732 F.3d at 160, and because the Court finds the mask mandate otherwise constitutional, the Doe Children's First Amendment retaliation claim (Count V) is dismissed. *See e.g.*, *Falcone*, 92 F.4th at 210 ("Because [plaintiff] failed to allege that she was engaged in constitutionally protected conduct, the District Court properly dismissed her First Amendment retaliation claim under § 1983").[16]

## VI.   **The Individual Defendants**

Finally, Defendants contend that the Trustees of the Board – Defendants Catherine Flanagan, Raymond Paris, Jennifer Maggio, Dr. Lynnda Nadien, Dr. Joseph Netto, Sonny Sagnuolo, and Sisi Townson (hereafter, the "Trustee Defendants"), as well as Principal O'Brien and Assistant Principal Azizollahoff (hereafter, the "Principal Defendants") should all be dismissed from this case. *See generally*, ECF Nos. 43-20, 45. The Court addresses each group in turn.

### A.   **The Trustee Defendants**

"Unlike Title VII, which can only be brought against an employer, a § 1983 discrimination claim can be brought against any individual responsible for the discrimination. However, a plaintiff must prove that the individual she pursues under § 1983 was personally involved in her alleged constitutional violation." *Peck v. County of Onondaga,* 5:21-CV-651, 2021 WL 3710546, at 9

---

[16] The Court is not required to reach the issue of whether there was retaliatory conduct because the Doe Children's "First Amendment claim faltered by failing to show that [their] refusal to wear a mask was constitutionally protected conduct." *See e.g.*, *Falcone*, 92 F.4th at 206 (holding the District Court was not required to "analyze the retaliatory nature of [plaintiff's] arrest" or to "recognize that the nature of [her] First Amendment protest was well known to all defendants" because it had already found plaintiff's conduct was not constitutionally protected).

(N.D.N.Y. Aug. 20, 2021) (internal citations omitted). "It is well settled in this Circuit that 'personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Pierro v. Hudson City Sch. Dist.*, No. 122CV670GLSCFH, 2023 WL 2742245, at *5 (N.D.N.Y. Mar. 31, 2023) (quoting *Johnson v. Miller*, No. 9:20-CV-622, 2020 WL 4346896, at *9 (N.D.N.Y. Jul. 29, 2020)) "That is to say, plaintiffs 'must allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Id.* "As to supervisory liability, there is no 'special test,' and 'a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 614 (2d Cir. 2020)).

With respect to Plaintiffs' Section 1983 claims against the Trustee Defendants in their individual capacities, these claims must be dismissed. Plaintiffs "never identif[y] the specific actions of individual members of the Board[], but, rather, refers to the Board [] as a collective group[.]" *Pierro*, No. 122CV670 (GLS)(CFH), 2023 WL 2742245, at *6. The Court finds Plaintiffs "ha[ve] engaged in 'impermissible group pleading,'" and the Amended Complaint "'offer[s] nothing to specifically indicate the extent of any individual Board Member's involvement in the complained-of unconstitutional conduct.'" *Id.* (quoting *Arnold v. Town of Calimus*, No. 5:20-CV-1364, 2023 WL 2456059, at *12 (N.D.N.Y. Mar. 9, 2023) ("[A]lthough [Plaintiff] alleges that the members of the Board of Education voted to take certain actions against her while they had knowledge of her complaints to management, [Plaintiff] alleges that she made these complaints to [persons outside the Board] and fails to articulate what information was relayed to each individual Board member and how each member voted. Thus, [Plaintiff's] allegations of actions taken by the individual members of the Board are not sufficient to plausibly allege personal involvement and Pierro's Section 1983 claims against the individual members of the Board must

be dismissed."); *Berkley v. City of New Rochelle*, No. 21-CV-578 (KMK), 2022 WL 784018, at *10 (S.D.N.Y. Mar. 15, 2022) (collecting cases) ("Failing to name a defendant outside the caption of the complaint and the 'parties' section is grounds for dismissal.").

### B.    The Principal Defendants

As to the Principal Defendants, Defendants argue that they should be afforded qualified immunity from suit. *See* ECF No. 43-20 at 31. Qualified immunity "protects public officials performing discretionary functions from personal liability in a civil suit for damages." *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (internal citations omitted). "Public officials are entitled to qualified immunity 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Hogue v. Scott*, 2021 WL 6050864, at *4 (D. Vt. Dec. 21, 2021) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2019)). At the pleading stage, "[t]he Second Circuit has held that it is very difficult for a qualified immunity defense to succeed…due to the doctrine's fact-specific nature." *Mongielo*, No. 22-CV-116-LJV, 2023 WL 2307887, at *19 (citing *McKenna v. Wright*, 386 F.3d 432, 436-37 (2d Cir. 2004)); *Collins v. Ferguson*, 804 F. Supp. 2d 134, 140–41 (W.D.N.Y. 2011) (internal citations omitted) ("Although a defendant may assert the defense of qualified immunity in a motion to dismiss, the Second Circuit has held that it is very difficult for such a defense to succeed at the pleading stage.").

The Court finds the motion to dismiss the Principal Defendants on qualified immunity grounds is premature. The allegations against them far exceed mere "discretionary functions of school officials" *Saggio*, 475 F. Supp. 2d at 212, or "implementation [of] COVID-19 restrictions[,]" and, with Count I still pending in this action, it remains unclear at this stage whether they violated a clearly-established right. *Mongielo*, No. 22-CV-116-LJV, 2023 WL 2307887, at

*19 (where the nonexistence of a constitutional right may be discerned from the face of the complaint, an official defendant sued in his individual capacity may be granted a dismissal on the ground of qualified immunity pursuant to Rule 12(b)(6)). *See e.g.*, *Collins*, 804 F. Supp. 2d at 141 ("In the case at bar, whether Ferguson and Fischer can successfully assert the defense of qualified immunity depends to a great extent on the facts concerning what actions they took and why they took those actions, in light of the surrounding circumstances. Their motion to dismiss on this ground is therefore denied as premature."); *Rivera v. Fischer*, 655 F. Supp. 2d 235, 239–40 (W.D.N.Y. 2009) ("[T]he allegations of the complaint do not demonstrate as a matter of law that Conway is entitled to qualified immunity from suit. Depending on what evidence is adduced through discovery, dismissal of plaintiff's claims against Conway may be warranted on a properly supported motion for summary judgment, but at this point, dismissal on this basis as to Conway is premature."); *Taylor v. Wilde*, No. 11-CV-3608 JS ETB, 2012 WL 2860999, at *4 (E.D.N.Y. July 10, 2012) (internal citations omitted) (cleaned up) ([A]ny adjudication as to the applicability of the qualified immunity affirmative defense would be premature since resolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation."). Their motion to dismiss on this ground is therefore denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss Counts II through VII of the Amended Complaint (ECF No. 43) is **GRANTED** *in part* and **DENIED** *in part* as follows:

(i) Counts II through VII of the Amended Complaint are dismissed;

(ii) The Trustee Defendants are dismissed; and

(iii) The motion to dismiss the Individual Defendants based upon qualified immunity is denied, without prejudice.

The parties are directed to meet and confer and, on or before December 20, 2024, file a joint proposed discovery schedule as to discovery on the remaining claim, Count I, for the undersigned's consideration.

Dated: Central Islip, New York
   December 11, 2024

**S O   O R D E R E D:**

/S/ *James M. Wicks*
   JAMES M. WICKS
United States Magistrate Judge
